**MILLER PIPELINE CORPORATION,**
Petitioner,

v.

**INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.**

No. 49T10–1012–TA–64.

Tax Court of Indiana.

Aug. 9, 2013.

Robert A. Romack, Dan R. Dunbar, Dunbar & Romack, Franklin, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

FISHER, Senior Judge.

Miller Pipeline Corporation appeals the Indiana Department of State Revenue's final determination denying its claim for refund of gross retail (sales) and use tax paid between 2005 and 2007. The matter is currently before the Court on Miller Pipeline's motion for partial summary judgment (Motion), which the Court denies.

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. On September 10, 2009, the Department completed an audit of Miller Pipeline for tax years 2005 through 2007. On September 21, 2009, the Department issued proposed assessments against Miller Pipeline for tax years 2006 and 2007. Miller Pipeline paid the proposed assessments in their entirety on October 23, 2009.

On March 24, 2010, Miller Pipeline filed a claim with the Department seeking a refund of sales and use taxes it paid between 2005 and 2007. The Department subsequently denied Miller Pipeline's refund claim.

Miller Pipeline initiated this original tax appeal on December 21, 2010. On April 25, 2013, Miller Pipeline filed its Motion. The Court conducted a hearing on the Motion on July 9, 2013.

## STANDARD OF REVIEW

Summary judgment is designed to provide speedy resolution to those cases—or those parts of cases—that may be determined as a matter of law because there are no factual disputes. *Matonovich v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1093, 1096 (Ind. Tax Ct.1999), *review denied.* *See also* Ind. Trial Rule 56(C) (explaining that summary judgment is proper only when there are no genuine issues of material fact[1] and the moving party is entitled to judgment as a matter of law). Stated differently, a case is appropriate for summary judgment if the parties present evidence that obviates the need for a trial (whether by jury or bench) to resolve differing versions of "the truth" (*i.e.*, of the facts). *See Stuteville v. Downing*, 181 Ind. App. 197, 391 N.E.2d 629, 631 (1979) (*citing First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The party moving for summary judgment bears the burden of establishing its propriety; thus, it must make a *prima facie* showing (1) that there are no genuine issues of material fact, and (2) that it is entitled to judgment as a matter of law. T.R. 56(C); *Babinchak v. Town of Chesterton*, 598 N.E.2d 1099, 1101 (Ind.Ct.App. 1992). As part of that *prima facie* showing, the moving party is required to refer the court to the specific evidentiary matter that demonstrates that there are no genuine issues of material fact; indeed, at the time of filing its motion for summary judgment, the moving party "shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." T.R. 56(C). Only

---

1. A genuine issue of material fact exists when a fact concerning an issue that would dispose of the case is in dispute or when an undisputed fact supports conflicting inferences as to the resolution of such an issue. *See Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1313 (Ind.1983) (citation omitted); *Scott Oil Co. v. Indiana Dep't of State Revenue*, 584 N.E.2d 1127, 1129 (Ind. Tax Ct.1992).

after the moving party makes its *prima facie* showing does the burden then shift to the non-moving party to show, through the designated evidence, that specific facts do indeed indicate a genuine issue of material fact. *Babinchak*, 598 N.E.2d at 1101 (citations omitted).

## ANALYSIS AND ORDER

Miller Pipeline's Motion presents the Court with ten different issues, each asserting one reason or another as to why it believes the Department erroneously denied its refund claim. (*See* Pet'r Br. Supp. Mot. Partial Summ. J. ("Pet'r Br.") at 6–20.) Pursuant to Trial Rule 56(C), Miller Pipeline also designated the evidence upon which it premised each of its issues. Specifically, Miller Pipeline provided the Court with 15 documents—labeled Exhibits 13 through 27—to show that there were no genuine issues of material fact. (*See* Pet'r Des'g Evid.; Pet'r Br., Exs. 13–27.) Given the numerous infirmities with that designated evidence, however, the Court will not be granting Miller Pipeline's Motion.

In order to address the infirmities with Miller Pipeline's designated evidence—yet conserve judicial resources—the Court's opinion today will speak only to two of Miller Pipeline's issues. Indeed, the exhibits specifically designated by Miller Pipeline with respect to those two issues suffer from particular problems that permeate all of Miller Pipeline's designated evidence.

## I.

In its first issue, Miller Pipeline asserts that it is entitled to a refund of the use tax it erroneously remitted on a casual sale transaction. (*See* Pet'r Br. at 6.) Specifically, Miller Pipeline explains:

A casual sale is defined as an isolated or occasional sale by the owner of tangible personal property where the owner is not regularly engaged in the business of making such sales. 45 I.A.C. 2.2–1–1(d). Here, [Miller Pipeline] purchased rolling stock, equipment, and tools in the amount of $949,006.00 from United Utilities Construction Company. [Miller Pipeline] self-assessed and remitted Indiana use tax in the amount of $36,687.36 for equipment and tools. United Utilities Construction Company was not engaged in the business of selling its rolling stock, equipment, and tools in the ordinary course of its business. Because the underlying transaction was a casual sale ... [the Department] erred in denying the portion of [Miller Pipeline's] refund claim related [thereto].

(Pet'r Br. at 6 (*citing* Pet'r Br., Exs. 13–15).)

As previously mentioned, Trial Rule 56(C) requires that at the time it files a motion for summary judgment, "a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." T.R. 56(C). Because the Rule compels a party to identify the "parts" of any document upon which it relies, it may not designate various pleadings, discovery material, and affidavits in their entirety. *See Filip v. Block*, 879 N.E.2d 1076, 1081 (Ind.2008) (citation omitted); *O'Connor v. Stewart*, 668 N.E.2d 720, 722 (Ind.Ct.App.1996). Rather, "regardless of how concise or short the document is, in order to be properly designated, specific reference to the relevant portion of the document [*i.e.*, the specific portion of the document that contains the material fact or facts upon which

the moving party relies] must be made."[2] *O'Connor*, 668 N.E.2d at 722 (footnote added). A proper designation should also include an explanation as to why those specifically designated facts are material. *Kissell v. Vanes*, 629 N.E.2d 878, 880 (Ind. Ct.App.1994) (citation omitted).

Moreover, when ruling on a motion for summary judgment, this Court will only consider properly designated evidence that would be admissible at trial. *See Kronmiller v. Wangberg*, 665 N.E.2d 624, 627 (Ind.Ct.App.1996) (citations omitted), *trans. denied. See also ·In re Belanger's Estate*, 433 N.E.2d 39, 42–43 (Ind.Ct.App. 1982) (stating that before a court can determine whether summary judgment is appropriate, it must make certain threshold decisions pertaining to the evidential worth of the designated evidence presented). Thus, unsworn statements or unverified exhibits will not be considered. *See Kronmiller*, 665 N.E.2d at 627 (citation omitted) (explaining that because medical records were neither authenticated nor shown to be true and accurate copies of the material they purported to be, they carried no indicia of reliability and trustworthiness).

Similarly, portions of affidavits that merely set forth conclusory facts or conclusions of law will not be considered. *Coghill v. Badger*, 430 N.E.2d 405, 406 (Ind.Ct.App. 1982) (citations omitted).

In designating Exhibits 13, 14, and 15 as its evidence with respect to the casual sale" issue, Miller Pipeline has not identified the specific *parts* of those exhibits that contain the material fact or facts upon which it relies. (*See* Pet'r Br. at 6 (merely citing to those exhibits *in toto* ).) Moreover, none of the exhibits has been paginated, despite the fact that each is between six and eleven pages long. (*See* Pet'r Br., Exs. 13–15.) Furthermore, while all three exhibits appear to contain multiple documents, Miller Pipeline has not, apart from the first document within each exhibit, identified any of those documents.[3] (*See* Pet'r Des'g Evid.; Br., Exs. 13–15 (footnote added).) Finally, none of the exhibits—or any of the documents within each of the exhibits—has been sworn to in any way. (*See* Pet'r Br., Exs. 13–15.) Given these infirmities, Miller Pipeline's Designated Exhibits 13, 14, and 15 are inadmissible and must be stricken.[4,]

**2.** While page numbers are usually sufficient, sometimes a more detailed specification may be necessary. *See Filip v. Block,* 879 N.E.2d 1076, 1081 (Ind.2008). The purpose for requiring this level of specificity is to decrease the amount of evidentiary material a court must sift through when ruling on a summary judgment motion. *See O'Connor v. Stewart,* 668 N.E.2d 720, 721–22 (Ind.Ct.App.1996) (citation omitted); *Kissell v. Vanes,* 629 N.E.2d 878, 880 (Ind.Ct.App.1994) (explaining that it is not a court's responsibility to search the record and piece together a party's summary judgment argument for it (citation omitted)).

**3.** For instance, in its "Designation of Evidence," Miller Pipeline "identifies" Exhibits 13, 14, and 15 as:

13. Miller Pipeline Corporation voucher 320918 dated March 23, 2006 in the

amount of $949,006.00 *and all supporting documents attached thereto.*

14. Miller Pipeline Corporation voucher 0462056 dated May 19, 2006 in the amount of $42,759.51 *and all supporting documents attached thereto.*

15. Miller Pipeline Corporation voucher 05053989 dated August 20, 2007 in the amount of $7,608.16 *and all supporting documents attached thereto.*

(Pet'r Des'g Evid. (emphases added).) While some of the documents are identifiable, most are not. (*Cf.* Pet'r Br. Supp. Mot. Partial Summ. J. ("Pet'r Br."), Ex. 14 at 2 (a portion of the Department's ST–103 form) *with* 3–11 (three distinct spreadsheets, none of which indicate who prepared them, when, and, most importantly, for what purpose).)

**4.** Miller Pipeline's Exhibits 16, 17, and 18 are in similar form: none of the exhibits is paginated, the facts within each exhibit are not

[5] *See Kronmiller,* 665 N.E.2d at 627–28 (footnotes added).

## II.

■ Miller Pipeline's eighth issue claims that it is entitled to a refund of use tax it erroneously remitted on a "lump-sum" contract. Indeed:

> [Miller Pipeline] contracted with Hession Farms, Inc. to replace field tile at a particular location. Per Anthony Hession, President, the underlying contract involved a "lump-sum" contract for improvement to realty and, as such, Hession Farms, Inc. paid sales/use tax on the materials used to complete the project. Under 45 I.A.C. 2.2–4–22 and 45 I.A.C. 2.2–4–26, the contractor in a "lump-sum" contract is liable for the payment of sales/use tax on the purchase price of all material used. Because Hession Farms, Inc. properly paid sales/use tax on the material portion of the "lump-sum" contract, [the Department] . . . erred in denying the portion of [Miller Pipeline's] refund claim related to use tax paid [thereto].

(Pet'r Br. at 12–13 (*citing* Pet'r Br., Ex. 26).)

Miller Pipeline's Designated Exhibit 26 is a photocopy of a one page form letter on "Dunbar & Romack" letterhead. (*See* Pet'r Br., Ex. 26 at 1.) The letter, dated November 24, 2009, and addressed to Hession Farms, Inc., reads:

> Dear Sir or Madam:
>
> My client was recently audited by the Indiana Department of State Revenue. During the course of the audit, the auditor questioned your invoice(s) below. See attached
>
> In order to respond to the auditor's questions, please provide the information below.
>
> 1. I hold valid Indiana retail merchant certificate. RRMC: _____.
>
> 2. I am engaged in the business of selling the following type of property:
> _____
>
> [ ] Hession Farms, Inc. has been audited by the Indiana Department of State Revenue for the period: _____ to _____.
>
> [ ] The questioned invoice involved a "lump-sum" contract for improvement to realty. As such, Hession Farms, Inc. paid sales/use tax on the materials used to complete the project.
>
> [ ] Other
>
> Explanation:
> _____

(Pet'r Br., Ex. 26 at 1.) The letter has a handwritten "x" in the box next to the statement "[t]he questioned invoice involved a "lump-sum" contract for improvement to realty. As such, Hession Farms, Inc. paid sales/use tax on the materials used to complete the project." (*See* Pet'r Br., Ex. 26 at 1.) At the bottom of the letter is an affirmation and the signature

identified with specificity, and none of the exhibits (or documents therein) has been sworn to in any way. (*See* Pet'r Br., Exs. 16–18.) Although Miller Pipeline's Exhibits 19, 20, and 24 are only one page each, none of those exhibits has been sworn to in any way. (*See* Pet'r Br., Exs. 19–20, 24.)

5. By not properly identifying, designating, and verifying the exhibits, Miller Pipeline and its attorneys have not only frustrated the purpose of Trial Rule 56(C), but the Court as well. Indeed, their lack of specificity essentially has the effect of placing a stack of paperwork before the Court and leaving it to figure out for itself the identity of the documents contained in each of the exhibits, what the relevant portions of each document are and why, and whether those documents are reliable and trustworthy. This task, however, does not belong with the Court and, as a result, the Court will not do the work that Miller Pipeline's attorneys should have done.

of "Anthony Hession, Pres." [6] (Pet'r Br., Ex. 26 at 1 (footnote added).) Attached to the letter is a material and labor invoice from Hession Farms, Inc. to Miller Pipeline for field tile replacement. (Pet'r Br., Ex. 26 at 2.)

Hession has not provided any facts in this letter which would support the *legal conclusion* that the subject transaction involved a "lump-sum" contract [7] nor has he provided any facts to show that Hession Farms, Inc. paid the tax "on the materials used to complete the project." (*See* Pet'r Br., Ex. 26 at 1.) Moreover, the mere fact that the letter was signed and affirmed does not make it an affidavit. *Cf. Coghill*, 430 N.E.2d at 406 (explaining that an affidavit " 'should follow substantially the same form as though the affiant were giving testimony in court' ") *with* T.R. 56(E) (stating that an affidavit for summary judgment purposes "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, *and*

*shall show affirmatively that the affiant is competent to testify to the matters stated therein* " (emphasis added)). Given these infirmities, Exhibit 26 is inadmissible and must be stricken.[8]

## CONCLUSION

The evidence Miller Pipeline submitted to support its Motion has not been properly designated and is inadmissible. Accordingly, Miller Pipeline's motion for partial summary judgment is hereby DENIED in its entirety.[9] The Court will, by separate order, schedule a case management conference with the parties to discuss pre-trial matters and scheduling.[10]

SO ORDERED.

---

6. The affirmation states that "I acknowledge that the above statements are true to the best of my knowledge and made under the penalties of perjury." (Pet'r Br., Ex. 26 at 1.)

7. Indeed, as Miller Pipeline alluded to in its brief, determining whether a contract is a "lump-sum" contract for purposes of sales/use tax imposition involves a legal analysis. (*See* Pet'r Br. at 12 (citing to various regulations of the Department relating to the taxability of "lump-sum" contracts).)

8. Miller Pipeline's Exhibits 21, 22, 23, 25, and 27 are in similar form. (*See* Pet'r Br., Exs. 21–23, 25, 27.)

9. The Court notes that unlike the first nine issues presented in Miller Pipeline's Motion, the tenth issue does not cite to or rely on Exhibits 13 through 27. (*Cf.* Pet'r Br. at 6–13 *with* 13–20.) Rather, with respect to this issue, Miller Pipeline has designated as its evidence various pleadings in this cause as well as the Department's audit report, which was submitted to the Court by the Department with its previously-filed motion to dismiss. (*See, e.g.,* Pet'r Des'g Evid.; Pet'r Br.

at 13–14, nn. 70–73.) While Miller Pipeline uses this evidence in an attempt to show there are no genuine issues of material fact with respect to its tenth issue, it cites to "Sampling for Sales and Use Tax Compliance Task Force on EDI Audit and Legal Issues for Tax Administration," the "California State Board of Equalization Sales and Use Tax Department Audit Manual Chapter 13 Statistical Sampling," and "Texas Comptroller of Public Accounts Audit Division Sampling Manual" to show that it is entitled to judgment as matter of law (*i.e.*, as its purported legal authority). (*See* Pet'r Br. at 13–20, nn. 77, 84, 91, 98, 105, 112, 119, 126.) Nevertheless, Miller Pipeline has not provided the Court with copies of those documents, with the relevant excerpts from those documents, or with an explanation as to how California and Texas audit/sampling manuals apply in Indiana. Consequently, the Court declines to "figure it out" for itself. *See supra*, note 5.

10. The Department has invited the Court to grant summary judgment in its favor because: 1) it has designated as evidence the proposed assessments; 2) those assessments are *prima*

*facie* evidence that its claim for the unpaid tax is valid; and 3) Miller Pipeline has failed to rebut that evidence. (*See* Resp't Br. at 3–5 (citations omitted); Hr'g Tr. at 26–27, 40, 48.) The Court declines that invitation, given that Miller Pipeline is appealing the Department's denial of a refund claim.