ATTORNEY FOR PETITIONER:
**JAMES K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
INDIANA ATTORNEY GENERAL
**JOHN P. LOWREY**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

_____

# IN THE
# INDIANA TAX COURT

**FILED**
Sep 18 2014, 11:39 am

**CLERK**
of the supreme court,
court of appeals and
tax court

_____

NICK POPOVICH,                              )
                                            )
    Petitioner,                  )
                                            )
        v.                     )    Cause No. 49T10-1010-TA-53
                                            )
INDIANA DEPARTMENT OF STATE                 )
REVENUE,                                    )
                                            )
    Respondent.                  )

_____

### ORDER ON PETITIONER'S MOTION FOR TRIAL RULE 37 SANCTIONS, INCLUDING JUDGMENT AND FEES

**FOR PUBLICATION**
**September 18, 2014**

WENTWORTH, J.

This matter concerns Nick Popovich's motion for default judgment, costs, and attorney's fees as sanctions for the Indiana Department of State Revenue's purported spoliation of evidence and discovery abuses. The Court denies Popovich's motion.

### BACKGROUND FACTS

On January 10, 2005, Popovich signed his 2003 Indiana Full-Year Resident Individual Income Tax Return, placed it with a mailing insert into an envelope, sealed the envelope, and directed a temporary employee to mail it to the Department. (See

Pet'r Mot. Trial Rule 37 Sanctions, Incl. J. & Fees ("Pet'r Mot. Sanctions"), Ex. A ¶¶ 7-8, Ex. B at 2-6.)  Popovich expected the employee to mail the return certified, return receipt requested, but she sent it through the regular U.S. mail.  (See Pet'r Mot. Sanctions, Ex. A ¶ 9.)

Sometime that same month, Popovich's ex-wife directed her employee to mail her 2003 Indiana Full-Year Resident Individual Income Tax Return to the Department.[1] (See Pet'r Mot. Sanctions, Ex. C ¶ 6, Ex. D ¶¶ 2-3.)  On February 1, 2005, the employee mailed the return to the Department certified, return receipt requested, number 7001 2510 0004 5406 1415.  (See Pet'r Mot. Sanctions, Ex. D ¶ 3.)  The employee subsequently superimposed a copy of the return receipt number onto a copy of the return and mailed that document to Popovich's ex-wife.  (See Pet'r Mot. Sanctions, Ex. C ¶ 7, Ex. D ¶ 5.)

Thereafter, the Department audited Popovich.  On January 28, 2008, the Department issued Proposed Assessments against him for additional income tax, interest, and penalties for the 2003 through 2005 tax years.  Popovich filed a protest. During the Department's protest hearing on March 27, 2009, Popovich asked to see his 2003 transmittal envelope and certain other documents because he believed that the 2003 Proposed Assessment was untimely and thus invalid.  (See Pet'r Mot. Sanctions at 3-4.)  The hearing officer agreed to notify Popovich once the envelope was retrieved from storage.  (See Pet'r Mot. Sanctions at 4.)

On April 27, 2009, Popovich sent a letter to the hearing officer inquiring about the retrieval of his 2003 transmittal envelope, but the hearing officer did not respond.  (See

---

[1]  Although the Popoviches were married in 2003, they filed their Indiana tax returns separately. (See Pet'r Mot. Trial Rule 37 Sanctions, Incl. J. & Fees ("Pet'r Mot. Sanctions"), Ex. B at 2, Ex. C ¶¶ 4-5; Hr'g Tr. at 47.)

Pet'r Reply Mot. Compel, Ex. R at 3; Pet'r Mot. Sanctions at 4.) The Department issued a Letter of Findings on August 3, 2010, explaining that the 2003 Proposed Assessment was issued timely because Popovich's 2003 transmittal envelope showed that his return was mailed on February 1, 2005. (See Pet'r Pet., Ex. A at 4; Pet'r Reply Mot. Compel, Ex. R at 3.)

On October 4, 2010, Popovich initiated an original tax appeal that challenged, among other things, the timeliness of the Department's 2003 Proposed Assessment against him. (See Pet'r Pet. ¶¶ 10-13.) Popovich subsequently served the Department with his first set of discovery requests, specifically seeking the production of his 2003 through 2005 transmittal envelopes. (See Pet'r Mot. Compel, Ex. A at 58-60.) On July 8, 2011, the Department produced photocopies of a mailing insert and a transmittal envelope bearing the certified mailing number of 7001 2510 0004 5406 1415 indicating a February 1, 2005, mailing date. (See Pet'r Mot. Sanctions, Ex. E.) In addition, the Department explained that it could not produce Popovich's 2004 and 2005 transmittal envelopes because it did not have them.[2] (See Pet'r Mot. Compel, Ex. A at 58-60.)

On August 26, 2011, Popovich asked the Department to arrange a time for him to inspect the originals of his 2003 through 2005 Indiana tax returns and their transmittal

---

[2] The Department also raised several objections in response to Popovich's first set of discovery requests and the subsequent deposition of its 30(B)(6) witness that ultimately led to Popovich filing two motions to compel and to the Department filing a motion for protective order. See generally Popovich v. Indiana Dep't of State Revenue (Popovich I), 7 N.E.3d 406 (Ind. Tax Ct. 2014) (granting in part and denying in part Popovich's first motion to compel and the Department's motion for protective order); Popovich v. Indiana Dep't of State Revenue (Popovich II), 7 N.E.3d 419 (Ind. Tax Ct. 2014) (denying Popovich's second motion to compel), reh'g denied, 13 N.E.3d 954 (Popovich III) (Ind. Tax Ct. 2014). These prior opinions chronicle the facts leading up to the filing of these motions, which Popovich alleges demonstrate the Department's obstructive discovery behavior. (See Pet'r Mot. Sanctions at 27-37.) The Court will not restate those facts here, but incorporates them by this reference. See Popovich I, 7 N.E.3d at 409-11; Popovich II, 7 N.E.3d at 420-21; Popovich III, 13 N.E.3d 954.

envelopes because he suspected that the Department had produced his ex-wife's 2003 transmittal envelope in error.  (See Pet'r Mot. Compel, Ex. B at 1, 8-9; Hr'g Tr. at 41-42, 49.)  Popovich did not inform the Department of his suspicion, but instead attempted to "get to the bottom" of things by using different discovery tools.  (See Hr'g Tr. at 42-46.)  As a result, about two weeks later, Popovich sent the Department a letter to renew his request to inspect.  (See Pet'r Mot. Compel, Ex. D at 1.)  The Department responded on September 26, 2011, explaining that Popovich could inspect the original documentation when it had finished collecting it.  (See Pet'r Mot. Compel, Ex. E.)  Four days later, Popovich questioned the delay, explaining that the Department had provided him with copies of the documents just two months before.  (See Pet'r Mot. Compel, Ex. F at 1, 3.)

On October 21, 2011, the Department sent Popovich a letter stating that while he could inspect his tax returns, it did not have any of the transmittal envelopes.  (See Pet'r Mot. Compel, Ex. G.)  After Popovich inspected the returns, he sent the Department a letter inquiring as to the whereabouts of the 2003 transmittal envelope produced in response to his first set of discovery requests on July 8, 2011.  (See Pet'r Sec. Mot. Compel, Ex. F.)

On November 18, 2011, Popovich served the Department with his second set of discovery requests, seeking to discover information about the Department's general record retention policy and his 2003 transmittal envelope.  (See generally Pet'r Mot. Sanctions, Ex. G.)  The Department responded that its record retention policy did not require it to keep transmittal envelopes, but it had elected to retain Popovich's 2003 transmittal envelope.  (See Pet'r Mot. Sanctions, Ex. H at 6-7.)  The Department further explained that while it did not maintain a record of the dates that it physically received

4

income tax returns, the postmark date on Popovich's 2003 transmittal envelope indicated that the return was filed on February 1, 2005. (See Pet'r Mot. Sanctions, Ex. H at 16-17.) Lastly, the Department stated that it could not identify which of its employees had handled Popovich's 2003 transmittal envelope because it did not maintain those types of records. (See Pet'r Mot. Sanctions, Ex. H at 18-20.)

On December 30, 2011, the Department supplemented its responses to Popovich's second set of discovery requests by presenting affidavits from a Manager in its Tax Administration and Support Division and from a Program Supervisor in its Legal Division. (See generally Pet'r Mot. Sanctions, Ex. J.) The Manager averred that his review of copies of Popovich's tax returns and a copy of the 2003 transmittal envelope indicated that the Department had retained the items consistent with its normal and customary procedures. (See Pet'r Mot. Sanctions, Ex. J at Supp. Ex. AA at 1-2 ¶¶ 6-9.) The Program Supervisor stated that when she first reviewed the Department's Returns Processing System database, it indicated that the Department received Popovich's 2003 tax return on February 7, 2005, but she corrected it to reflect the date on the 2003 transmittal envelope, February 1, 2005.[3] (See Pet'r Mot. Sanctions, Ex. J at Supp. Ex. AA at 31 ¶¶ 7-12.)

In the meantime, Popovich had arranged to depose the Department's previously designated 30(B)(6) witness on January 6, 2012, and issued a Subpoena Duces Tecum to the witness requesting that he bring the original of the 2003 transmittal envelope and certain other original documents to the deposition. (See Pet'r Sec. Mot. Compel, Exs. A-C.) The Department sent an e-mail less than 24-hours before the deposition,

---

[3] The screenshot of the database that the Department submitted to show that the postmark date had been corrected, however, still displayed a postmark date of February 7, 2005. (See Pet'r Mot. Sanctions, Ex. J at Supp. Ex. AA at 31 ¶¶10-12, 60-65.)

however, indicating that it would not allow the original documents off its premises. (See Pet'r Sec. Mot. Compel, Ex. D.) When the Department's witness indicated during the deposition that he did not bring any of the requested original documents with him, Popovich adjourned the deposition. (See Pet'r Mot. Sanctions at 13-14.) Shortly thereafter, the Department advised Popovich that he could inspect the original of the 2003 transmittal envelope later that day. (See Pet'r Mot. Sanctions, Ex. L at 1-2, Ex. M at Supp. Ex. Q ¶ 6; Pet'r Sec. Mot. Compel, Ex. H at 2.) Popovich inspected the transmittal envelope, but did not tell the Department that he believed the envelope was not his own. (See Pet'r Mot. Sanctions at 14, Ex. K; Hr'g Tr. at 46.)

On February 2, 2012, Popovich sent the Department a letter to follow-up regarding its previous promise to supplement its responses to his second set of discovery requests. (See Pet'r Mot. Sanctions, Ex. L.) The Department responded on February 7, 2012, stating that it had adhered to its policies and procedures in retaining Popovich's 2003 transmittal envelope, which it located on January 5, 2012. (See Pet'r Mot. Sanctions, Ex. M at 7-10, 13.) Shortly thereafter, the Court granted the Department's motion for an immediate stay of all discovery. As a result, Popovich's depositions of additional 30(b)(6) witnesses, which the parties had agreed to conduct on February 14, 2012, did not take place.

On February 22, 2012, Popovich filed this Motion for Trial Rule 37 Sanctions, Including Judgment and Fees, requesting an entry of default judgment and an award of all litigation costs, claiming that the Department had purposefully destroyed, mutilated, or lost his 2003 transmittal envelope and obstructed discovery. The Court held a hearing on July 31, 2014. Additional facts will be supplied as necessary.

## LAW

The Court may impose a variety of sanctions pursuant to either Indiana Trial Rule 37 or its inherent authority to deter litigants and their attorneys from engaging in spoliation and to provide relief to aggrieved litigants. See Gribben v. Wal-Mart Stores, Inc., 824 N.E.2d 349, 351 (Ind. 2005) (discussing the imposition of sanctions under Trial Rule 37); Prime Mortg. USA, Inc. v. Nichols, 885 N.E.2d 628, 650-51 (Ind. Ct. App. 2008) (discussing the inherent power of courts to impose sanctions). The Court's imposition of sanctions pursuant to its inherent authority is not confined to circumstances involving the violation of a court order or discovery ruling like it is under Trial Rule 37(B). Compare, e.g., West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) with Hatfield v. Edward J. DeBartolo Corp., 676 N.E.2d 395, 399 (Ind. Ct. App. 1997), trans. denied. Whatever avenue the Court uses, however, it must always ensure that a sanction is "just" in light of the particular circumstances of each case. See Ind. Trial Rule 37(B)(2); Howard Reg'l Health Sys. v. Gordon, 952 N.E.2d 182, 189-90 (Ind. 2011) (stating that courts should "consider both the spoliating party's culpability and the level of prejudice to the party seeking discovery"); Prime Mortg., 885 N.E.2d at 649 ("'The only limitation on [a] court in determining an appropriate sanction is that the sanction must be just'" (citation omitted)). Consequently, a finding of spoliation alone does not necessarily require the imposition of sanctions. See Howard Reg'l Health Sys., 952 N.E.2d at 189-90; see also Smith v. Borg-Warner Auto. Diversified Transmission Prods. Corp., No. IP 98-1609-C-T/G, 2000 WL 1006619, *7 (S.D. Ind. July 19, 2000) ("The measure of sanctions to be imposed, if any, must be proportionate to the conduct and circumstances justifying sanctions") (citation omitted).

7

Spoliation is a particular discovery abuse that involves the intentional or negligent destruction, mutilation, alteration, or concealment of physical evidence. See Glotzbach v. Froman, 854 N.E.2d 337, 338 (Ind. 2006); Gribben, 824 N.E.2d at 354; Loomis v. Ameritech Corp., 764 N.E.2d 658, 662-64 (Ind. Ct App. 2002) (holding that the spoliation doctrine does not apply to testimonial evidence), trans. denied. See also West, 167 F.3d at 779 (stating that spoliation includes "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" (citation omitted)). The party raising a claim of spoliation bears the burden of proving that 1) there was a duty to preserve the evidence, and 2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence. See Glotzbach, 854 N.E.2d at 338-39 (explaining that the duty to preserve evidence may be assumed voluntarily or imposed by statute, regulation, contract, or certain other circumstances); Zubulake v. UBS Warburg LLC (Zubulake IV), 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("It goes without saying that a party can only be sanctioned for destroying evidence if it had a duty to preserve it").

**ANALYSIS**

Popovich contends that an entry of default judgment and an award of all litigation costs are "just" sanctions for two alterative reasons. First, Popovich contends that the Department should be sanctioned for its spoliation of evidence. (See, e.g., Pet'r Mot. Sanctions at 18-21.) In the alternative, Popovich asserts that the severity of the Department's discovery abuses generally as well as its misrepresentations regarding

his 2003 transmittal envelope warrant the imposition of sanctions.[4]  (See, e.g., Hr'g Tr. at 74-80, 120-35.)

## I.

In his Motion, Popovich claims that the requested sanctions are proper because the Department had both a statutory and a self-imposed duty to preserve his 2003 transmittal envelope, but it destroyed or lost the envelope and then attempted to cover-up its failure by passing off his ex-wife's 2003 transmittal envelope as if it were his own. (See Pet'r Mot. Sanctions at 18-19; Hr'g Tr. at 29-30.)  The Department, on the other hand, contends that it had no such duty.  (See Resp't Br. Resp. Pet'r Mot. Sanctions ("Resp't Resp. Br.") at 14-17.)

### Statutory Duty

Popovich claims that the Department's Records Retention and Disposition Schedule (Retention Schedule) promulgated pursuant to Indiana Code § 6-8.1-5-2 required the Department to preserve his 2003 income tax return and the related transmittal envelope for a period of six years.[5]  (See Pet'r Mot. Sanctions at 18-20 (claiming that transmittal envelopes are part of the tax returns), Ex. I; Hr'g Tr. at 69-73.)

---

[4]  Popovich has also asserted that he is entitled to an entry of default judgment pursuant to Indiana Trial Rule 55.  (See Pet'r Reply Supp. Mot. Sanctions at 14; Hr'g Tr. at 127.)  Popovich, however, did not develop any argument specific to Trial Rule 55, and the Court will not develop one for him.  Accordingly, Popovich has not shown that he is entitled to an entry of default judgment pursuant to Indiana Trial Rule 55.

[5]  Popovich also cited to the Internal Revenue Service's (IRS) Internal Revenue Manual (the IRM) for the proposition that the Department had a duty to preserve Indiana income tax return transmittal envelopes.  (See Pet'r Mot. Sanctions at 19 (citing IRM § 3.10.72.5.7 (Jan. 1, 2014) (explaining the mail processing procedures for the preservation of federal income tax return transmittal envelopes)).)  Nonetheless, the IRM is not binding on the IRS, but even if it were, Popovich has acknowledged that IRS practices are not binding on the Department.  See First Fed. Sav. & Loan Ass'n of Pittsburgh v. Goldman, 644 F. Supp. 101, 103 (W.D. Pa. 1986) (stating "[t]he procedures set forth in the IRM do not have the effect of a rule of law and, therefore, are not binding upon the IRS").  (See also Hr'g Tr. at 73.)  Accordingly, the IRM did not require the Department to preserve Popovich's 2003 transmittal envelope.

Given that statutory duty, Popovich explains that the Department had a continuing duty to safeguard his 2003 transmittal envelope, particularly after concerns about the timeliness of the 2003 Proposed Assessment arose at the protest hearing on March 27, 2009. (See Pet'r Reply Supp. Mot. Sanctions ("Pet'r Reply Br.") at 15; Hr'g Tr. at 74-75.)

In 2009, the Department's Retention Schedule described the retention period for individual income tax returns as follows: "TRANSFER to the RECORDS CENTER one and one-half (1 1/2) years after the filing deadline. DESTROY after an additional four and one-half (4 1/2) years in the RECORD CENTER. TOTAL RETENTION: Six (6) years from the filing deadline."[6] (Pet'r Mot. Sanctions, Ex. I.) Moreover, Indiana Code § 6-8.1-3-6 states that the Department shall maintain copies of all tax returns filed with the Department for a period of three years. See IND. CODE § 6-8.1-3-6(a) (2009). Both refer to the retention of tax returns; therefore, the resolution of this issue depends on whether an Indiana individual income tax return transmittal envelope is part of the tax return.

Neither the Department's Retention Schedule nor Indiana Code § 6-8.1-3-6 expressly refer to the retention of tax return transmittal envelopes or define the term "tax return." (See Pet'r Mot. Sanctions, Ex. I.) See also I.C. § 6-8.1-3-6. In addition, no Indiana statute or regulation defines the term "tax return." But see IND. CODE § 6-3-1-28 (2014) (defining a "combined income tax return" as "any income tax return on which one (1) or more taxpayers report income, deductions, and credits on a combined basis with one (1) or more other entities"). Consequently, the Court will define the term "tax return" consistent with its plain, ordinary, and usual meaning. See Johnson Cnty. Farm Bureau

---

[6] The March 21, 2012, amendment to the Department's Retention Schedule has no bearing on the resolution of this issue. See RECORDS RETENTION & DISPOSITION SCHEDULE (2014), available at http://www.in.gov/apps/icpr/retention/icpr_retention.

10

Coop. Ass'n v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991) (stating that non-technical, undefined words in a statute are to be given their ordinary and accepted dictionary meanings), aff'd, 585 N.E.2d 1336 (Ind. 1992).

Black's Law Dictionary states that a tax return is "[a]n income tax form on which a person or entity reports income, deductions, and exemptions, and on which a tax liability is calculated." BLACK'S LAW DICTIONARY 1601 (9th ed. 2009). Webster's Dictionary similarly defines a "return" as "a formal document executed in accordance with law on a required form showing taxable income, allowable deductions and exemptions, and the computation of tax due[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1941 (2002); see also BLACK'S LAW DICTIONARY 1601 (stating a "tax return" is "[o]ften shortened to return"). The plain, ordinary, and usual meaning of the term "tax return," therefore, indicates that an Indiana individual tax return means only the forms used in reporting and computing an individual's tax liability, not the transmittal envelopes used for mailing those forms. See Caylor-Nickel Clinic, P.C. v. Indiana Dep't of State Revenue, 569 N.E.2d 765, 769 (Ind. Tax Ct. 1991) (providing that statutory language is deemed intentionally chosen by the legislature and the Court will not read in language that has been omitted), aff'd, 587 N.E.2d 1311 (Ind. 1992). Moreover, the Department has explained that it has never interpreted its Retention Schedule to require the preservation of income tax return transmittal envelopes. (See Resp't Resp. Br. at 15; Pet'r Mot. Sanctions, Ex. H at 7.) See also Chrysler Grp., LLC v. Review Bd. of Indiana Dep't of Workforce Dev., 960 N.E.2d 118, 124 (Ind. 2012) (stating that courts should defer to an agency's reasonable interpretation of a statute it is charged with enforcing even when faced with an equally reasonable interpretation by another party). Accordingly,

Popovich has not shown that the Department had a statutory duty to preserve his 2003 transmittal envelope.

## Self-Imposed Duty

Popovich also claims that the Department had a self-imposed duty to preserve his 2003 transmittal envelope for three interrelated reasons. Popovich explains that 1) public policy encourages the recognition of a duty in this case because 2) the Department's hearing officer indicated that the Department had the envelope when the timeliness of the 2003 Proposed Assessment arose in the protest hearing, 3) and the Department could reasonably foresee the harm resulting from the envelope's subsequent destruction. (See Pet'r Mot. Sanctions at 21; Pet'r Reply Br. at 14-15.)

Popovich's claim that the Department imposed a duty on itself to preserve his 2003 transmittal envelope is based exclusively on the hearing officer's statement that she would arrange for the retrieval of his 2003 transmittal envelope. (See Hr'g Tr. at 30-31 (indicating that the hearing officer stated that she would get the transmittal envelope from storage and that it would probably take a week).) Popovich apparently equates the hearing officer's statement to a binding declaration of the Department's policy regarding the preservation of income tax return transmittal envelopes. The hearing officer's statement, however, is not binding. See, e.g., Medco Health Solutions, Inc. v. Indiana Dep't of State Revenue, 9 N.E.3d 263, 265-66 (Ind. Tax Ct. 2014) (discussing the issuance of binding rulings); West Publ'g Co. v. Indiana Dep't of Revenue, 524 N.E.2d 1329, 1333-34 (Ind. Tax Ct. 1988) (explaining that the mere possibility that the Department's agents made certain statements was an insufficient basis for an estoppel). Moreover, the hearing officer's statement could reasonably reflect nothing

12

more than her willingness to obtain all retained documents from storage rather than her specific knowledge of what documents were retained in storage. Consequently, Popovich has not established that the Department had a self-imposed duty to preserve his 2003 transmittal envelope.

## II.

Finally, Popovich asserts that the gravity of the Department's discovery misdeeds demands the imposition of all requested sanctions. More specifically, Popovich maintains that the facts show that the Department intentionally offered a forged or fraudulent document (i.e., his ex-wife's 2003 transmittal envelope) as if it were his solely to substantiate the timeliness of its 2003 Proposed Assessment. (See Hr'g Tr. at 29, 56, 120-35.) Popovich asserts that the Department diligently worked to conceal this misdeed by obstructing several aspects of discovery[7] and by littering its discovery responses and certain other court filings with groundless objections as well as evasive, contradictory, and blatantly false statements.[8] (See Pet'r Mot. Sanctions at 23-38.)

The facts before the Court establish that the Department had Popovich's 2003 transmittal envelope at some point, that it preserved the mailing insert that was placed inside the envelope, and that the Department believes that it has produced Popovich's 2003 transmittal envelope in response to Popovich's discovery requests. The facts further reveal that the Department did not expressly admit that it had misplaced the

---

[7] For instance, Popovich explains that the Department inexplicably delayed his request to inspect the 2003 transmittal envelope by nearly two months and that the Department improperly threatened to file a motion to quash with respect to another potential deponent. (See Pet'r Mot. Sanctions at 24-25, 32.)

[8] For example, Popovich explains that the Department provided scant information regarding the chain of custody of his 2003 transmittal envelope and made spurious and unprofessional statements when asked about its compliance with a discovery deadline. (See Pet'r Mot. Sanctions at 26-29.)

13

2003 transmittal envelope, when it was evident that it had. Moreover, the facts establish that Popovich's ex-wife's 2003 transmittal envelope bears the certified mailing number of 7001 2510 0004 5406 1415 and that the transmittal envelope produced by the Department in response to Popovich's discovery requests bears the same certified mailing number. In addition, the facts show that instead of revealing his concerns regarding his ex-wife's transmittal envelope, Popovich repeatedly asked the Department to produce his 2003, 2004, and 2005 transmittal envelopes to provide it with opportunities to "come clean." (See Hr'g Tr. at 44.)

As the Court has noted previously, the discovery process in this case has been acrimonious. See Popovich v. Indiana Dep't of State Revenue (Popovich II), 7 N.E.3d 419, 423 (Ind. Tax Ct. 2014), reh'g denied, 13 N.E.3d 954 (Popovich III) (Ind. Tax Ct. 2014). Indeed, the parties have used the discovery process not as a mechanism to unearth all relevant facts and evidence, but rather as an opportunity for gamesmanship, which engendered secrecy, incivility, and distrust. While the Court does not condone this behavior, it cannot infer from the facts before it that the Department intentionally or even negligently destroyed, mutilated, or altered Popovich's 2003 transmittal envelope. Nor can the Court infer from the facts that the Department conspired to supplant Popovich's 2003 transmittal envelope with his ex-wife's transmittal envelope. Accordingly, Popovich has not shown that the Department's discovery misdeeds warrant the entry of a default judgment and an award of all litigation expenses, including attorney's fees.

## CONCLUSION

For the above stated reasons, the Court DENIES Popovich's Motion for Trial

14

Rule 37 Sanctions, Including Judgment and Fees. The Court will schedule, by separate order, an Indiana Trial Rule 37(A)(4) hearing on the propriety of expenses given its resolution of <u>Popovich v. Indiana Department of State Revenue</u> (<u>Popovich I</u>), 7 N.E.3d 406 (Ind. Tax Ct. 2014), <u>Popovich II</u>, and <u>Popovich III</u>.

        SO ORDERED this ___ day of September 2014.

_____
Martha Blood Wentworth, Judge
Indiana Tax Court

DISTRIBUTION:
James K. Gilday, GILDAY & ASSOCIATES, P.C., Chase Tower, 111 Monument Circle, Suite 3300 , Indianapolis, IN 46204-5176;

Gregory F. Zoeller, Attorney General of Indiana, By: John P. Lowrey, Deputy Attorney General, Indiana Government Center South, Fifth Floor, 302 West Washington Street, Indianapolis, IN 46204-2770.