ATTORNEY FOR PETITIONER:
**JAMES K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
INDIANA ATTORNEY GENERAL
**JOHN P. LOWREY**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Apr 14 2016, 2:09 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

NICK POPOVICH, )
                )
    Petitioner, )
                )
        v. )    Cause No. 49T10-1010-TA-00053
                )
INDIANA DEPARTMENT OF STATE )
REVENUE, )
                )
    Respondent. )

## ORDER ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**April 14, 2016**

WENTWORTH, J.

Nick Popovich claims that he is a professional gambler and, as such, reported income and deductions associated with his trade. The Indiana Department of State Revenue disagreed that gambling was his occupation and issued adjusted gross income tax (AGIT) assessments for the 2003, 2004, and 2005 tax years ("years at issue"). The matter, currently before the Court on the Department's Motion for Summary Judgment, presents the following issues for the Court to decide: whether the Department's 2003 AGIT assessment was timely; and whether Popovich was a

professional gambler eligible for certain deductions from his adjusted gross income. Upon review, the Court finds in favor of Popovich in part and denies the Department's Motion.[1]

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. On December 29, 2007, the Department issued an Investigation Summary to Popovich rejecting his contention that he was engaged in the trade or business of gambling in 2003 and 2004. (See Resp't Confd'l Des'g Evid., Vol. VI at 1213-31, May 11, 2012.) Consequently, on January 28, 2008, the Department issued Proposed Assessments to Popovich in the amount of $403,762.72 for additional AGIT due, as well as interest and penalties. (See Resp't Confd'l Des'g Evid., Vol. VI at 1232-41.) Popovich protested, but the Department upheld the Proposed Assessments in their entirety. (See Resp't Confd'l Des'g Evid., Vol. I at 1252-63; Resp't Des'g Evid., Vol. I at 1203-12.)

On October 4, 2010, Popovich initiated an original tax appeal challenging the Department's imposition of additional AGIT and interest for the 2003 and 2004 tax years and its imposition of negligence penalties for all of the years at issue. (See Pet'r Br. Supp. Resp. Opp'n Resp't Mot. Summ. J. ("Pet'r Br.") at 2-3 (citing generally Pet'r Pet.), Aug. 15, 2014.) On February 9, 2012, the Department moved for summary judgment and designated, among other things, the Proposed Assessments as evidence. On February 27, 2015, the Court held a hearing on the Department's Motion. Additional facts will be supplied as necessary.

---

[1] The parties have designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

## STANDARD OF REVIEW

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A genuine issue of material fact exists when a fact concerning an issue that would dispose of the case is in dispute or when the undisputed facts support conflicting inferences as to the resolution of an issue. Miller Pipeline Corp. v. Indiana Dep't of State Revenue, 995 N.E.2d 733, 734 n.1 (Ind. Tax Ct. 2013).

## ANALYSIS

When, as here, the Department has moved for summary judgment and properly designated its Proposed Assessments as evidence, it has made a prima facie case that there is no genuine issue of material fact regarding the validity of the assessed tax. See Indiana Dep't of State Revenue v. Rent-A-Center E., Inc. (RAC II), 963 N.E.2d 463, 466-67 (Ind. 2012). Consequently, the burden to produce evidence that demonstrates that there is, in actuality, a genuine issue of material fact with respect to the assessed tax has shifted to Popovich. See id. at 467.

Popovich designated evidence to demonstrate whether genuine issues of material fact exist regarding the timeliness of the Department's 2003 Proposed Assessment and whether Popovich was engaged in the trade or business of gambling in 2003 and 2004. (See Pet'r Br. at 39-68.) Nevertheless, the Court must first address the Department's arguments that a portion of Popovich's designated evidence, i.e., Popovich's Affidavit and Preston Boskett's Expert Witness Report, is inadmissible. (See generally Resp't Reply Supp. Resp't Mot. Summ. J. ("Resp't Reply Br.") at 4-7 (referring

to Pet'r Des'g Evid., Exs. A-B, Aug. 15, 2014), Jan. 20, 2015.)  See also Miller Pipeline, 995 N.E.2d at 736 (providing that "when ruling on a motion for summary judgment, this Court will only consider properly designated evidence that would be admissible at trial" (citations omitted)).

## I.  Popovich's designated evidence

### Popovich's Affidavit

The Department asserts that the Court should disregard Popovich's Affidavit because it "contradicts other statements made by Popovich during discovery[,]" is internally inconsistent, contains conclusory statements, puts Popovich's credibility at issue, and improperly attempts to create genuine issues of material fact where there are none.  (See Resp't Reply Br. at 4-5; Hr'g Tr. at 98-99.)  The Department, however, has not supported these assertions by identifying a single instance where statements in Popovich's Affidavit contradicted his discovery statements, were internally inconsistent, were improperly conclusory, put his credibility at issue, or improperly attempted to create a genuine issue of material fact.  Instead, the Department merely identified instances where Popovich's characterization of the evidence differed from the Department's.  (Compare, e.g., Resp't Reply Br. at 4 and Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 20-22, Feb. 9, 2012 with Pet'r Des'g Evid., Ex. A ¶¶ 62-66 (where the Department alleged that Popovich was an employee of Sage-Popovich, Inc. during the years at issue and Popovich averred that he was not).)  Accordingly, the Court will not find Popovich's Affidavit inadmissible as designated evidence.

### Boskett's Report

The Department also maintains that the Court should disregard Boskett's Report

4

because it merely shows that Boskett is an expert on opening and managing casinos, not on gambling or professional gambling. (See Resp't Reply Br. at 5-7.) Expert opinion testimony "must be preceded by a foundation of evidence establishing the witness's credentials as an expert and the reliability of any scientific methods utilized by the witness to reach the opinion." Noblesville Casting Div. of TRW, Inc. v. Prince, 438 N.E.2d 722, 727 (Ind. 1982). Thus, Popovich needed to do more than contend that Boskett's work in casinos for nearly 30 years made him an expert on gambling and professional gamblers to establish Boskett's familiarity with blackjack and professional blackjack players. (See Pet'r Sur-Reply Opp'n Resp't Mot. Summ. J. at 8-10 (referring to Pet'r Des'g Evid., Ex. B at 32-35), Feb. 17, 2015; Hr'g Tr. at 88-91.) Because Popovich did not lay a proper foundation to show Boskett's expertise regarding professional gambling, the Court will not consider Boskett's Report in resolving the Department's Motion.

## II. The 2003 Proposed Assessment

In moving for summary judgment and designating its 2003 Proposed Assessment as evidence, the Department has made a prima facie case that there is no genuine issue of material fact. Nonetheless, Popovich contends that there is a genuine issue of material fact whether the Department's 2003 Proposed Assessment was timely issued. (See Pet'r Br. at 12-13, 39-42 (referring the Court to the arguments and evidence he presented in litigating his earlier motion for Trial Rule 37 sanctions).) In response, the Department explains that Popovich's certified mail transmittal envelope demonstrates his 2003 income tax return was mailed to the Department on February 1, 2005, and thus, when it issued the Proposed Assessment on January 28, 2008, it was well within

5

the three year limit required under Indiana Code § 6-8.1-5-2(a).  (See Resp't Br. at 15 (citing Resp't Des'g Evid., Vol. I at 1137).)  See also IND. CODE § 6-8.1-5-2(a) (2003) (providing that the Department "may not issue a proposed assessment . . . more than three (3) years after  . . . the date [a] return is filed").  The Department further supports its claim by stating that Popovich has failed to rebut the accuracy of the Proposed Assessment because he did not indicate when his 2003 income tax return was actually mailed.  (See Resp't Reply Br. at 9-10 (citing Pet'r Mot. Trial Rule 37 Sanctions, Including J. & Fees ("Pet'r Mot. Sanctions"), Ex. A ¶¶ 8-9, Feb. 22, 2012); Hr'g Tr. at 39-42, 99.)  In the alternative, the Department asserts that no statute of limitations governs here because Popovich's 2003 certified mail transmittal envelope proves his return was mailed well after its 2004 due date, making Popovich's "late" return "the legal equivalent of no return at all."  (See Resp't Br. at 14-15.)  See also I.C. § 6-8.1-5-2(e) (providing that "if a person does not file a return, there is no time limit within which the department must issue its proposed assessment").

When this Court ruled on Popovich's motion for Trial Rule 37 sanctions, it found that the 2003 certified mail transmittal envelope the Department attributed to Popovich actually belonged to Popovich's former wife.  Popovich v. Indiana Dep't of State Revenue (Popovich IV), 17 N.E.3d 405, 413 (Ind. Tax Ct. 2014).  Thus, that envelope does not demonstrate that Popovich mailed his 2003 income tax return to the Department in February of 2005.  Also contrary to the Department's claim, Popovich submitted an affidavit during the course of the Trial Rule 37 proceedings that established the date his 2003 income tax return was mailed to the Department was January 10, 2005.  (See Resp't Reply Br. at 9-10 (citing Pet'r Mot. Sanctions, Ex. A ¶ 9

6

(providing that a temporary employee "mailed [Popovich's 2003 Indiana income tax return] to the [Department] on January 10, 2005" (emphasis added))).) See also Popovich IV, 17 N.E.3d at 407 (finding that Popovich also signed his income tax return on January 10, 2005). Finally, even if Popovich's 2003 income tax return were untimely,[2] the Department is incorrect that a late return is tantamount to never having filed a return at all. Indeed, the plain language of Indiana Code § 6-8.1-5-2(a) and Indiana Code § 6-8.1-6-3(a) both contemplate the filing of late returns. Specifically, Indiana Code § 6-8.1-5-2(a) acknowledges that a return filed after the due date has the same effect as a timely filed return regarding when an assessment may be made. See I.C. § 6-8.1-5-2(a) (providing that the Department "may not issue a proposed assessment . . . more than three (3) years after the latest of the date the return is filed[] or . . . the due date of the return") (emphasis added). In addition, Indiana Code § 6-8.1-6-3(a) does not expressly exclude untimely returns from those considered to be filed. See IND. CODE § 6-8.1-6-3(a) (2003) (providing that a tax return mailed to the Department is considered to be filed with the Department on the "date displayed on the post office cancellation mark stamped on the document's wrapper") (amended 2008).

When reviewing a motion for summary judgment, the Court construes all properly asserted facts and reasonable inferences drawn therefrom in favor of the non-moving party. See Pinnacle Entm't, Inc. v. Indiana Dep't of State Revenue, 32 N.E.3d 1216,

---

[2] Popovich has claimed that his income tax return was not late because he received an extension of time to file the return. (See Pet'r Br. Supp. Resp. Opp'n Resp't Mot. Summ. J. ("Pet'r Br.") at 12 (citing Pet'r Des'g Evid., Ex. I at 357-58 (providing that Popovich timely filed a 2003 Application for Automatic Extension of Time to File Indiana Form IT-40 or Form IT-40PNR (Form IT-9) and made an extension payment of tax)), Aug. 15, 2014.) The Department maintains, however, that he did not receive an extension. (See Resp't Reply Supp. Resp't Mot. Summ. J. ("Resp't Reply Br.") at 8 n.4 (arguing that Popovich's purported Form IT-9 voucher does not resemble the actual form), Jan. 20, 2015.) Nonetheless, the resolution of this issue has no bearing on whether the Department's 2003 Proposed Assessment was timely.

1218 (Ind. Tax Ct. 2015). In this case, the only reasonable inference to be drawn from the Court's decision in Popovich IV, the designated evidence, and the language of Indiana Code § 6-8.1-5-2(a) and § 6-8.1-6-3(a) is that Popovich filed his return with the Department on January 10, 2005, the date it was signed and deposited in the mail. In light of this and because the parties do not dispute that the Department issued its 2003 Proposed Assessment on January 28, 2008, the Court finds that the 2003 Proposed Assessment was not timely issued and thus is void. Accordingly, with no genuine issue of material fact regarding the untimeliness of the Department's 2003 Proposed Assessment, Popovich has shown that he is entitled to summary judgment on this issue as a matter of law. See T.R. 56(B) ("When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party").

### III. Engaged in the trade or business of gambling

Finally, the Department claims that Popovich was not eligible as a matter of law to deduct from his income the expenses he incurred while playing blackjack in 2004.[3] (See Resp't Br. at 15-38.) The expense deductions at issue are above-the-line-deductions made pursuant to the provisions of the Internal Revenue Code and the related U.S. Treasury Regulations in determining federal adjusted gross income. See, e.g., I.R.C. §§ 62, 162, 183 (2004). Indiana incorporates by specific reference these federal provisions and regulations in defining adjusted gross income under IRC § 62 as the starting place for calculating an individual's Indiana adjusted gross income. IND. CODE § 6-3-1-3.5(a) (2004) (amended 2005). Determining whether a taxpayer is

---

[3] Although the Department has also claimed that Popovich could not deduct his 2003 gambling expenses, the Court need not address this claim having determined that the Department's 2003 Proposed Assessment is invalid.

8

engaged in a trade or business, here professional gambling, or is pursuing instead a hobby, has been frequently litigated in federal courts that typically refer to the regulations promulgated under section 183 of the Internal Revenue Code (the hobby loss rules). See Nickeson v. C.I.R., 962 F.2d 973, 976 (10th Cir. 1992). See also, e.g., Moore v. C.I.R., 102 T.C.M. (CCH) 74, 2011 WL 2929186, at *2-3 (T.C. 2011); Betts v. C.I.R., 100 T.C.M. (CCH) 67, 2010 WL 2990300, at *5-15 (T.C. 2010); McKeever v. C.I.R., 80 T.C.M. (CCH) 358, 2000 WL 1297710, at *8-19 (T.C. 2000). The hobby loss rules were "derived principally from prior case law" and focused on whether the taxpayer was engaged in the activity with the objective of making a profit. See, e.g., Golanty v. C.I.R., 72 T.C. 411, 425-27 (T.C. 1979), aff'd by 647 F.2d 170 (9th Cir. 1981); accord C.I.R. v. Groetzinger, 480 U.S. 23, 35 (1987) (resolving the issue based on whether the taxpayer gambled with continuity and regularity and with the primary purpose of income or profit).

Treasury Regulation § 1.183-2 provides that the determination of whether a taxpayer is engaged in an activity with the objective of making a profit is a question of fact to be resolved based on all the facts and circumstances in a specific case. See Treas. Reg. § 1.183-2(a) (2003); see also Golanty, 72 T.C. at 426. The Regulation further instructs that a taxpayer's expectation of profit need not be reasonable, but it must be bona fide. See Treas. Reg. § 1.183-2(a); Golanty, 72 T.C. at 426. Furthermore, the Regulation indicates that although a taxpayer's subjective intent is germane, greater weight should be given to the objective facts. See Treas. Reg. § 1.183-2(a).

To that end, the Regulation sets forth a non-exhaustive list of factors to be

weighed when determining whether a taxpayer was engaged in gambling with the objective of making a profit. See Treas. Reg. § 1.183-2(b). These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Id. No single factor or specific group of factors, however, is dispositive; consequently, all nine of the enumerated factors will not apply in every case. See id.; Golanty, 72 T.C. at 426; Hastings v. C.I.R., 97 T.C.M. (CCH) 1355, 2009 WL 814227, at *4-5 (T.C. 2009).

The very nature of these inquires make it highly unlikely that this determination could ever be resolved by summary judgment. Indeed, this Court has recently explained that it will not grant summary judgment to any party when the evidentiary presentations require it to resolve factual disputes and conflicting inferences, assess a witness's credibility, or determine where the preponderance of the evidence lies before it has been fully presented. See Elmer v. Indiana Dep't of State Revenue, 42 N.E.3d 185, 197 (Ind. Tax Ct. 2015). While the parties have agreed that factors 4 and 5 do not apply, (compare Pet'r Br. at 44-45 with Resp't Br. at 23-24 and Resp't Reply Br. at 13), all of the remaining factors are susceptible to conflicting inferences because all the reasonable inferences that can be drawn from the material facts are in dispute. For example, the parties dispute the reasonable inferences to be drawn from 1) Popovich's

self-prepared records regarding his businesslike manner, 2) his readings, talking to casino employees, and lack of a card counting strategy regarding his expertise, 3) the amount of time he spent gambling, 4) his significant losses overall as related to his occasional winnings, 5) his losses that may indicate a motive of sheltering other income, and 6) his 20 year history of playing blackjack for recreation. (Compare Resp't Br. at 20-22, 24, 26-28, 31-35, 37-38 and Resp't Reply Br. at 17-20 with Pet'r Br. at 7, 9-10, 22-35, 51-62.) Accordingly, the parties have asked the Court to make exactly the types of judgment calls with respect to each of the relevant factors that make summary judgment inappropriate.[4]

## CONCLUSION

For the above-stated reasons, the Court finds that there are no genuine issues of material fact regarding the untimeliness of the Department's 2003 Proposed Assessment, and therefore, the Court GRANTS summary judgment to Popovich with respect to this issue. Nonetheless, because there are genuine issues of material fact regarding whether Popovich was a professional gambler eligible for certain deductions from his adjusted gross income for the 2004 tax year, the Court DENIES summary judgment to either party with respect to this issue. Consequently, the Court will order the parties to file a joint status report under separate cover.

SO ORDERED this 14th day of April 2016.

_____
Martha Blood Wentworth, Judge
Indiana Tax Court

---

[4] The parties have also presented several other arguments regarding the importance of, and inferences to be drawn from, certain facts. (Compare, e.g., Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 3-6, Feb. 9, 2012 and Resp't Reply Br. at 5, 7-8 with Pet'r Br. at 12-21 and Pet'r Sur-Reply Opp'n Resp't Mot. Summ. J. at 7-8, Feb. 17, 2015.) The Court need not resolve these arguments to dispose of this issue.

11

Distribution:  James K. Gilday, John P. Lowrey