

APPELLANTS PRO SE
Lt. Henry G.L. McCullough
Princess S.D. Naro-McCullough
South Bend, Indiana

ATTORNEYS FOR APPELLEE
Shannon O'Connell Egan
Ft. Mitchell, Kentucky

Harry W. Cappel
Cincinnati, Ohio

# In the
# Indiana Supreme Court

No. 71S03-1605-MF-272

LT. HENRY G.L. MCCULLOUGH AND
PRINCESS S.D. NARO-MCCULLOUGH,

*Appellants (Defendants below),*

v.

CITIMORTGAGE, INC.

*Appellee (Plaintiff below).*

Appeal from the St. Joseph Circuit Court, No. 71C01-1405-MF-000270
The Honorable Michael G. Gotsch, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 71A03-1509-MF-1349

**March 14, 2017**

**Rucker, Justice.**

Husband and wife appeal the grant of summary judgment that resulted in foreclosure of their family homestead. Concluding there are no genuine issues of material fact precluding summary disposition, we affirm the judgment of the trial court.

## Background

Lt. Henry G.L. McCullough and his wife Princess S.D. Naro-McCullough ("Homeowners") are honorably discharged Viet Nam era military veterans against whom CitiMortgage, Inc. ("CitiMortgage") obtained a judgment of foreclosure against their home of more than twenty years. Homeowners attempted to appeal, but as they had done before the trial court, the couple proceeded without legal representation. In doing so, they encountered difficulty navigating our appellate rules. Specifically, after filing a timely Notice of Appeal and Completion of Transcript, Homeowners tendered a woefully defective Appellant's Brief and Appendix. The Clerk of Courts issued a letter of defect noting the numerous deficiencies in the parties' brief. Homeowners responded with a motion asking the Court of Appeals to accept their non-conforming submissions. The Court of Appeals denied the motion. Thereafter CitiMortgage moved to dismiss the appeal on grounds that Homeowners failed to remedy the defects in their filings within the applicable time period. In response, Homeowners tendered, and moved for permission to file, a belated brief which was also defective. The Court of Appeals denied the motion and dismissed the attempted appeal with prejudice. And it acted well within its discretion in doing so. See, e.g., Miller v. Hague Ins. Agency, Inc., 871 N.E.2d 406, 407 (Ind. Ct. App. 2007) (noting, "[a]lthough we will exercise our discretion to reach the merits when violations are comparatively minor, if the parties commit flagrant violations of the Rules of Appellate Procedure we will hold issues waived, or dismiss the appeal"). Here the violations were flagrant. Homeowners filed a petition to transfer which the Court initially denied. On reconsideration, deciding to address the merits, we vacated the order denying transfer and assumed jurisdiction over this appeal. Briefing on the merits proceeded in due course.

**Facts and Procedural History**[1]

The relevant undisputed facts in this case are these. On April 15, 1994, Homeowners borrowed $158,620.00 from the Union Federal Savings Bank of Indianapolis ("Union Federal") and executed a promissory note ("Note") in that principal sum. This was a 30-year loan backed by the Veteran's Administration with a 7.5% rate of interest beginning June 1, 1994.[2] Union Federal assigned the Note to Waterfield Mortgage Company, Incorporated ("Waterfield"), which then assigned it back to Union Federal. Union Federal subsequently endorsed the Note in blank making it payable to bearer.[3] Monthly installments were in the amount of $1,109.10 and made payable to Waterfield. Under terms of the Note, a single untimely payment would constitute default.

Also on April 15, 1994, Homeowners executed a mortgage ("the Mortgage") in favor of Union Federal using the property as security for repayment of the loan. A family home located on Farmingdale Drive in Granger, Indiana, the Mortgage described the property as follows:

---

[1] Because Homeowners' Appendix was defective and because CitiMortgage failed to file an Appendix with its Appellee's brief, see Ind. Appellate R. 49(A), we were compelled to procure several documents from the trial court as part of the record pursuant to Appellate Rule 27 to aid in our review. See Horton v. State, 51 N.E.3d 1154, 1162 (Ind. 2016). The documents are cited herein as they were titled by the parties or contained in the trial court's record, as designated by "R."

[2] VA loans are generally "conforming" loans (in the sense that they are saleable to FannieMae/Freddie Mac) made available only to veterans. VA loans differ from standard conforming mortgages in that they: (1) permit the borrower to make little or no down payment; (2) use slightly relaxed credit underwriting guidelines; and (3) the lender is ultimately guaranteed the right to collect any deficiency from the borrower.

[3] The Note was endorsed by Union Federal with the notation, "PAY TO THE ORDER OF: Waterfield Mortgage Company, Incorporated WITHOUT RECOURSE UNION FEDERAL SAVINGS BANK OF INDIANAPOLIS." Complaint, Ex. A. A Waterfield vice president endorsed the Note with, "PAY TO THE ORDER OF UNION FEDERAL BANK OF INDIANAPOLIS." Id. A Union Federal vice president then endorsed the Note in blank with following notation: "WITHOUT RECOURSE, PAY TO THE ORDER OF:" and a blank space was placed after the word "OF." Id. These endorsements made the Note payable to the bearer. See Ind. Code § 26-1-3.1-109(a)(2) ("A promise or order is payable to bearer if it: . . . does not state a payee[.]"); I.C. § 26-1-3.1-205(b) ("If an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a 'blank endorsement'. When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.").

3

> Lot Numbered Eight (8) as shown on the recorded Plat of Country Side Estates, Section Three (3), recorded August 29, 1978 in the Office of the Recorder of St. Joseph County, Indiana, as Instrument No. 7818691[.]

Complaint On Note and To Foreclose Mortg., Ex. B. The Mortgage was recorded on April 18, 1994 in the Office of the Recorder of St. Joseph County. On September 15, 1999 Union Federal assigned the Mortgage to Waterfield. Three years later on February 21, 2002 Waterfield assigned the Mortgage back to Union Federal; and on May 4, 2006 Union Federal as "assignor" transferred the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as "nominee" for CitiMortgage as "assignee."

On May 21, 2014, CitiMortgage, which by that time held both the Note and Mortgage on Homeowners property, filed its Complaint On Note and To Foreclose Mortgage. The complaint alleged default in the monthly installments on the Note as of January 1, 2013, and on the first day of each month thereafter. CitiMortgage sought:

> [J]udgment, IN REM, against the real estate being foreclosed herein, in the sum of the outstanding principal balance of $100,806.90 together with all accrued interest thereon as provided in the mortgage note, and together with all late charges, expenses, advances and other amounts due and owing thereunder, including reasonable attorney fees, court costs, title work and any other further amounts expended by plaintiff, which are collectible, under the terms of said mortgage note and mortgage[.]

Complaint On Note and To Foreclose Mortg. at 3. During a telephone conference on July 16, 2014, Homeowners requested a settlement conference that was scheduled for September 18, 2014, the result of which is not in the record before us. In any event on January 23, 2015, CitiMortgage moved for summary judgment on its previously-filed complaint. In support CitiMortgage submitted the following designated evidence among others: (1) the Note, a copy of which was attached to its complaint as an exhibit; (2) the Mortgage, a copy of which was attached to its complaint as an exhibit; (3) the Assignments of the Mortgage, copies of which were attached to its complaint; and (4) an Affidavit made by Linda Rodriguez, CitiMortgage's Vice President of Document Control ("the Rodriguez affidavit"). The Rodriguez affidavit declared among other things:

4

6.  Borrower executed a promissory note dated April 15, 1994, for $158,620.00 secured by a Mortgage on a property located at 52854 Farmingdale Drive, Granger, Indiana 46530.

7.  CitiMortgage, Inc. has the right to foreclose based on the following: CitiMortgage, Inc., is the holder of the Note.  The Plaintiff's agent has possession of the original promissory note, which has been endorsed in blank.

8.  Due to Borrower's failure to make proper payments when due on January 1, 2013 and thereafter, Borrower is in default and continues to be in default under Borrower's loan documents.  As of the date of this affidavit, Borrower has not cured its payment default under the promissory note and mortgage.  As a result, Borrower's loan payment has been accelerated and the entire loan balance is now due an[d] owing pursuant to the terms of the loan documents.

Plaintiff's Motion for Summary Judgment, Ex. A.  Homeowners did not immediately respond to CitiMortgage's motion for summary judgment.  Instead, they filed a cross-motion to dismiss CitiMortgage's complaint contending generally they were not in default on their Note and Mortgage.  Homeowners attached various exhibits which they contended supported their arguments.  Thereafter on February 16, 2015 CitiMortgage renewed its motion for summary judgment, and Homeowners responded with a cross-motion for summary judgment which they subsequently amended.  Then on motion by CitiMortgage the trial court converted Homeowners' cross-motion to dismiss to a motion for summary judgment and deemed it amended to their pending cross-motion for summary judgment.  Both sides tendered numerous documents in support of and in opposition to their motions.  Ironically, Homeowners' submissions included a July 2, 2013 letter to CitiMortgage acknowledging Homeowners continued to be in arrears on their mortgage.  See R. at 203, Ex. 18.  On August 5, 2015 the trial court granted summary judgment in favor of CitiMortgage and denied Homeowners' motion.  Essentially the trial court granted CitiMortgage an *in rem* judgment against the property in the principal sum of $100,806.90 together with interest plus various expenses and ordered a Sheriff's sale.  This appeal followed in due course.

**Standard of Review**

"When reviewing a grant or denial of a motion for summary judgment our standard of review is the same as it is for the trial court."  Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012).

The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 (Ind. 2012). Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, "then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." Id. In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter the parties have specifically designated to the trial court. See Ind. Trial R. 56(C). We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. Kroger Co v. Plonski, 930 N.E.2d 1, 5 (Ind. 2010), abrogated on other grounds by Rogers v. Martin, 63 N.E.3d 316 (Ind. 2016).

## Discussion

Despite massive submissions to the trial court, Homeowners presented no affidavits in support of their own motion for summary judgment or in opposition to CitiMortgage's motion for summary judgment. Although "[s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence," Ind. Tr. R. 56(C), affidavits are an important tool to "set forth specific facts showing that there is a genuine issue for trial." Ind. Tr. R. 56(E). And many of the purported "exhibits" Homeowners attached to their pleadings were more in the nature of unverified assertions in support of their arguments rather than evidence contemplated by Trial Rule 56. "The law is well settled that neither arguments of counsel nor allegations in memoranda qualify as evidentiary materials for purposes of a motion for summary judgment." Richard-Wilcox, Inc. v. Cummins, 700 N.E.2d 496, 499 n.3 (Ind. Ct. App. 1998). We acknowledge Homeowners have proceeded before the trial court and on appeal without counsel. But, "[a]n appellant who proceeds *pro se* is held to the same established rules of procedure that a trained legal counsel is bound to follow and, therefore, must be prepared to accept the consequences of his or her action." Thacker v. Wentzel, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003) (emphasis added) (quotation omitted).

6

The record shows that sometime around 2006 Homeowners began encountering health related problems, accompanied by mounting debt, that ultimately led them to file three different bankruptcy petitions, which we discuss in more detail below. Homeowners make several claims in support of their argument explaining why they believe the trial court erred in granting summary judgment in favor of CitiMortgage.[4] However one claim—which is variously stated— appears to provide the underlying basis for their insistence that foreclosure against their home is improper. Specifically, Homeowners are adamant that by the time this foreclosure action was filed in May 2014, they no longer owed any debt to CitiMortgage. This contention is based on three claims: (1) documentation from their three bankruptcies show that between 2006 and 2013 Homeowners paid a total of $122,007.21 in principal to CitiMortgage; (2) CitiMortgage did not apply Chapter 13 Plan payments as intended—presumably all toward principal pay down; and (3) the mortgage was paid in full when the Trustee filed a copy of the final report with the Bankruptcy court showing Homeowners had been "discharged."

We first observe Homeowners provide no evidence to support their contention that all of their Chapter 13 Plan payments were to be applied toward principal. In fact among their vast array of documents and other filings Homeowners do not include a copy of the various Plans or the orders of confirmation. As for Homeowners' contention they paid over $120,000.00 in principal to CitiMortgage, the Rule 56 material properly before the trial court does not support this assertion. As noted above Homeowners filed three separate bankruptcy petitions. The record shows in 2006 Homeowners filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana, No. 06-31451 ("Bankruptcy I"). CitiMortgage filed a proof of claim in Bankruptcy I for an arrearage in the amount of $18,665.85

---

[4] For example, attacking the propriety of MERS Homeowners contend the Mortgage was improperly assigned. However, this court has rejected a challenge to MERS as assignee and has recognized such transfers as valid. See Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 809 (Ind. 2012) (noting, "[i]n the event of default, MERS simply assigns the mortgage to whichever member bank currently owns the note, and that bank forecloses on the borrower"). Homeowners also contend CitiMortgage never presented to the court the "original" mortgage and note. First, Homeowners cite no authority standing for the proposition that CitiMortgage was required to present the original documents. In any case, according to the affidavit of CitiMortgage's Business Operations Analyst "CitiMortgage is and was prior to filing the complaint in this case, in possession of the original Note." Supp. Aff. of Natasha Stringer, Ex. 1, ¶ 7. This affidavit was attached to CitiMortgage's Reply in Support of its Motion for Summary Judgment; the affidavit also declared the Mortgage at issue was "a true and accurate copy of the mortgage . . . which secures payment of the Note. . . ." Id. at ¶ 8. Homeowners' submissions do not controvert these assertions.

and a total claim of $124,154.04. The Standing Trustee's Final Report and Account showed both claims "allowed." The Final Report also showed principal paid in the amount of $53,002.79. Homeowners were dismissed from Bankruptcy I on November 23, 2009 on the Trustee's motion because Homeowners defaulted on the Plan payments. Bankruptcy I was terminated on February 9, 2010 without an order of discharge.

Just as Bankruptcy I was winding down, Homeowners on January 6, 2010 filed a second Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana, No. 10-30023 ("Bankruptcy II"). CitiMortgage again filed a proof of claim asserting a total amount due of $131,633.84, with an arrearage of $19,453.14. As with the Final Report in Bankruptcy I, the Final Report for Bankruptcy II likewise shows that both claims were "allowed." It also shows principal paid in the amount of $42,492.75 and $9,988.72 towards the arrearage. On October 22, 2012 Bankruptcy II was dismissed on Homeowners' motion. And again Homeowners' debts were not discharged.

In the meantime, on October 15, 2012, Homeowners filed a third Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana, No. 12-33597 ("Bankruptcy III"). As it had done twice before, CitiMortgage filed a proof of claim, this time alleging $13,343.26 in arrearage and a total claim of $113,279.23. On October 30, 2013 Bankruptcy III was converted from a Chapter 13 to a Chapter 7 plan. The Trustee's Final Report for Bankruptcy III, dated November 25, 2013 discharging Homeowners, showed nothing was paid towards the arrearage and reflected "Mortgage Ongoing" in the amount of $106,491.26.

We pause here to note that the difference between Chapter 13 and Chapter 7 is the difference between reorganization and liquidation. In a liquidation type bankruptcy, "the debtor surrenders his assets (subject to certain exemptions) and in exchange is relieved of his debts (with certain exceptions), thus giving [the debtor] a 'fresh start.'" Palomar v. First American Bank, 722 F.3d 992, 995 (7th Cir. 2013). By contrast in a reorganization type bankruptcy, the debtor's assets are not surrendered or sold. Instead, the debtor pays his creditors as much as he can afford over a three or five-year period. Id. More precisely, "Chapter 13 of the Bankruptcy Code allows debtors to retain some assets and pay off their debts with future income." In re

Pajian, 785 F.3d 1161, 1163 (7th Cir. 2015) (citing 11 U.S.C. § 1322). "The debtor makes regular payments to a trustee pursuant to a plan that the debtor must file." Id. (citing 11 U.S.C. §§ 1321-22). "After the bankruptcy court confirms the plan, the trustee begins to distribute payments to creditors, as specified in the debtor's plan." Id. (citing FED. R. BANKR. P. 3021). "Once the debtor makes all of the payments required by the plan, the bankruptcy court discharges most of the debtor's remaining debts." Id. (citing 11 U.S.C. § 1328(a)).

As we explained earlier, Homeowners' Chapter 13 Bankruptcies I and II were terminated without an order discharging their remaining debts. In any event after the Chapter 13 Bankruptcy III was converted to a Chapter 7, Homeowners debts were "discharged" and Bankruptcy III was thereafter terminated on March 14, 2014.

Relying on this declaration of "discharge" Homeowners steadfastly and adamantly maintain that at the time CitiMortgage filed its Complaint On Note and To Foreclose Mortgage they were no longer indebted to CitiMortgage. See, e.g., Appellant's Br. at 1 ("The mortgage was paid in full on November 25, 2013 when the Trustee filed a copy of the final report with the Bankruptcy Court."). Unfortunately, however, Homeowners misapprehend two different but interrelated concepts, namely: the loan due on the mortgage as evidenced by the Note, and the lien on the property as evidenced by the Mortgage.

It is certainly true that a Chapter 7 discharge eliminates a homeowner's personal liability for its mortgage loan. In simple terms the discharge "wipes out" a homeowner's obligation to pay back the loan. One purpose of a Chapter 7 bankruptcy is to give debtors a fresh start so they can enjoy a new opportunity in life with a clear field for future efforts, unhampered by the pressure of preexisting debt. See In Re Jahrling, 816 F.3d 921, 924 (7th Cir. 2016) (noting, "[f]ederal bankruptcy law is aimed at providing fair and orderly relief for the honest but unfortunate debtor, who can obtain a fresh start by distributing available assets to creditors and discharging debts left unpaid" (internal quotation omitted)). Indeed, "[i]n the ordinary course of bankruptcy, the debtor's assets are applied to the payment of his debts and, even though the assets will usually be insufficient to pay those debts in full, he will emerge from bankruptcy with the unpaid balance discharged so that he can start afresh with no overhang of debt." McClellan

v. Cantrell, 217 F.3d 890, 892 (7th Cir. 2000); see also Ruth v. First Fed. Sav. & Loan Ass'n of LaPorte Cty., 492 N.E.2d 1105, 1109 (Ind. Ct. App. 1986) (noting, "[a] discharge in bankruptcy has the effect of releasing the bankrupt from any personal liability upon his debts").

But discharge of debt has no bearing on the validity of the mortgage lien. "A mortgage is an interest in real property that secures a creditor's right to repayment." Johnson v. Home State Bank, 501 U.S. 78, 82 (1991). Upon a debtor's default, in addition to the remedy of foreclosure, a creditor may "sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally." Id. However, "[a] defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation." Id. at 83. Still, "such a discharge extinguishes *only* 'the personal liability of the debtor.'" Id. (emphasis in original) (citing 11 U.S.C. § 524(a)(1)); see also Cowart v. White, 711 N.E.2d 523, 528 (Ind. 1999) ("A bankruptcy discharge voids any judgment based on the personal liability of the debtor and operates as an injunction against an action to recover any discharged debt." (citing 11 U.S.C. § 524(a))).

The foregoing recitation codifies the rule of Long v. Bullard, 117 U.S. 617 (1886), that "the [Bankruptcy] Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." Johnson, 501 U.S. at 83. In short, a bankruptcy discharge removes the ability of creditors to seek to collect against the debtor individually (known as *in personam* liability). Liens, on the other hand are *in rem* meaning they are rights against the property which are enforceable. And although the Bankruptcy Code provides a mechanism for avoidance of liens, nothing in the record before us shows Homeowners sought to avoid the debt secured by CitiMortgage's lien or that the mortgage was otherwise declared void. See 11 U.S.C. § 522(c)(2).

Here, by obtaining a discharge in their Chapter 7 Bankruptcy, Homeowners protected themselves from personal liability on debts otherwise due all their creditors including CitiMortgage.[5] Those debts can no longer be collected from Homeowners personally. But the

---

[5] A docket entry in the Chapter 7 Bankruptcy dated 12/04/2013 shows, among other things: "Claims scheduled to be discharged without payment . . . : $168385.54."

mortgage lien survived and is enforceable as an *in rem* action. In this summary judgment proceeding, based upon its Complaint on Note and to Foreclose Mortgage, CitiMortgage did not seek an *in personam* judgment against Homeowners themselves, but rather an *in rem* judgment against their property for which there was an outstanding lien balance. This was altogether proper, and the trial court correctly granted summary judgment in favor of CitiMortgage.

## Conclusion

We affirm the judgment of the trial court.

Rush, C.J., and David, Massa and Slaughter, JJ., concur.

11