ATTORNEY FOR PETITIONER:
**JAMES K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEY FOR RESPONDENT:
**JOHN P. LOWREY**
DEPUTY CHIEF LITIGATION COUNSEL
OFFICE OF CORPORATION COUNSEL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| GILDAY & ASSOCIATES, P.C., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 22T-TA-00008 |
| | ) | |
| MARION COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

FILED
May 20 2024, 2:22 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## ON DIRECT APPEAL FROM THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**May 20, 2024**

ROBB, Senior J.

This case examines whether Gilday & Associates, P.C. ("Gilday"), the highest bidder at a foreclosure sale, qualifies for a refund of property taxes both paid directly post-acquisition and indirectly by a lender on behalf of the former owner. Gilday contends that it is entitled to a refund for 2014 through 2017 as a matter of law, arguing its status as either a successor owner or taxpayer and the improper revocation of the prior owner's homestead deductions for these years justify its claim. In contrast, the Marion County Assessor (the "Assessor") contends that Gilday does not satisfy the legal criteria needed to be deemed a taxpayer eligible for refunds and maintains that

homestead deductions cannot be reinstated retroactively. Upon review, the Court grants

summary judgment to Gilday only with respect to the taxes it paid directly in 2017 tax.

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. In 1987, Dr. Paul Terry Batties purchased

a single-family residence in Lawrence Township, Marion County, Indiana (the "subject

property"). (*See* Pet'r Des'g Evid. Supp. Mot. Summ. J. ("Pet'r Des'g Evid.") Ex. G ¶ 4,

Ex. FF at 39-40.) He exclusively used the property as his personal residence and

received Indiana's standard homestead deduction annually until its revocation in 2013.

(*See* Pet'r Des'g Evid. Ex. A at 10, Ex. G ¶¶ 6, 8-9, Ex. FF at 105, Req. for Admis. Nos.

6-7.)

Before the homestead deduction was revoked, Batties had secured a mortgage

using the subject property as collateral with Green Tree Servicing, LLC (n/k/a Ditech

Financial LLC) ("Green Tree"),and subsequently took out a second mortgage with

Gilday. (*See* Pet'r Des'g Evid. Ex. G ¶ 10, Ex. L, Ex. M at 9-40, Ex. CC at 1.) After

Batties defaulted on the first mortgage, Green Tree used its own funds to cover all

property tax liabilities from 2014 to 2016 and half of the 2017 liabilities. (*See* Pet'r Des'g

Evid. Ex. G ¶¶ 11-12, Ex. H ¶ 5, Ex. M at 2, Ex. DD at 5-9, Ex. JJ at 17-22, 30-33, 52-

53, 56.)

In September 2013, Green Tree filed a "Complaint to Foreclose Mortgage" with

the Marion County Superior Court, naming Batties, Gilday, and several others as

defendants. (Pet'r Des'g Evid. Ex. M.) In response, Gilday filed both a counterclaim and

a crossclaim, culminating in an "Agreed Foreclosure Judgment" between Gilday and

Green Tree. (Pet'r Des'g Evid. Exs. N-O.) The court approved this agreed judgment on

December 8, 2014. (*See* Pet'r Des'g Evid. Ex. O.) On December 12, 2014, the court also issued a separate foreclosure decree in favor of Green Tree. (*See* Pet'r Des'g Evid. Ex. P.)

Over three years later, in July 2018, Gilday purchased the subject property for $375,000 at a sheriff's sale, using a portion of its own judgment to make the highest bid.[1] (*See* Pet'r Des'g Evid. O at 5, Ex. U.) Gilday then paid $280,467.86 via cashier's check to the Marion County Sheriff ("Sheriff"), who applied these funds to fully settle Green Tree's outstanding judgment. (*See* Pet'r Des'g Evid. Exs. R-T.) The Sheriff issued a Sheriff's Deed to Gilday on July 31, 2018. (*See* Pet'r Des'g Evid. Ex. F.) Batties vacated the property shortly thereafter in August. (*See* Pet'r Des'g Evid. Ex. G ¶ 7.) In October 2018, Gilday paid the remaining tax liability for 2017. (*See* Pet'r Des'g Evid. Ex. V, Ex. JJ at 21, 33, 57.)

In November 2018, Gilday filed four "Notice[s] to Initiate an Appeal" ("Forms 130") with the Marion County Property Tax Assessment Board of Appeals (the "PTABOA"), seeking to correct certain deduction errors from 2014 to 2017 for the subject property.[2] (*See, e.g.*, Pet'r Des'g Evid. Ex. A at 6-10, Ex. W.) Specifically, Gilday claimed that the homestead deductions for these years were "inexplicably" and "erroneously" removed, resulting in overstated property tax liabilities. (*See, e.g.*, Pet'r Des'g Evid. Ex. A at 10.) Asserting that it had paid these taxes both directly and indirectly via its payment to the Sheriff, Gilday claimed it was entitled to a refund. (*See,*

---

[1] The delay of three and a half years in conducting the sheriff's sale was primarily due to Batties initiating bankruptcy proceedings in 2015. (*See* Pet'r Des'g Evid. Exs. Z, AA-DD.)

[2] Gilday filed an additional appeal concerning the 2018 tax year; however, that appeal is not at issue in this case. (*See* Pet'r Pet. Jud. Rev. ("Pet'r Pet.") ¶ 8; Pet'r Des'g Evid. Ex. W.)

*e.g.*, Pet'r Des'g Evid. Ex. A at 10.) The PTABOA, however, denied the appeals, concluding that as the "new owner," Gilday could not "go back and resurrect an inactive deduction" post-acquisition. (*See, e.g.*, Pet'r Des'g Evid. Ex. A at 17.)

In January 2019, Gilday appealed to the Indiana Board of Tax Review (the "Indiana Board"), which dismissed the case for lack of standing. (*See* Pet'r Des'g Evid. Exs. A-D.) *See also Gilday & Assocs., P.C. v. Marion Cnty. Assessor* (*Gilday I*), 176 N.E.3d 1000, 1003 (Ind. Tax Ct. 2021). Gilday then appealed to this Court, which found the dismissal improper and remanded the case for further proceedings. *See id.* at 1004-06.

The Indiana Board held a hearing on Gilday's appeals on January 10, 2022. (*See* Pet'r Des'g Evid. Ex. MM ¶ 4.) However, it failed to issue its final determination within the required ninety (90) days. (*See* Pet'r Pet. Jud. Rev. ¶ 12.) *See also* IND. CODE § 6-1.1-15-4(f) (2022) (providing that the Indiana Board shall issue a final determination ninety (90) days after conducting a hearing). Consequently, Gilday filed a direct appeal with this Court on May 31, 2022, and later moved for summary judgment. A hearing on the motion was conducted on June 12, 2023. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The Tax Court reviews direct appeals initiated pursuant to Indiana Code § 6-1.1-15-5(g) *de novo*. IND. CODE § 6-1.1-15-5(g) (2024). Accordingly, the Court is not bound by the evidence presented or the issues raised during the administrative proceedings. *See Convention Headquarters Hotels, LLC v. Marion Cnty. Assessor*, 132 N.E.3d 77, 81 (Ind. Tax Ct. 2019).

4

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "The moving party 'bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.'" *McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 824 (Ind. 2017) (emphasis added and citation omitted). "Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, 'then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact.'" *Id.* (citation omitted). "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised in the motion although no motion for summary judgment is filed by such party." T.R. 56(B).

## DISCUSSION

The issue before the Court is whether Gilday, having acquired the subject property at a sheriff's sale, should be refunded property taxes it paid, as well as those paid by Green Tree on behalf of the prior owner, for tax years 2014 through 2017. During these years, it is undisputed that Green Tree paid all tax liabilities for 2014 through half of 2017 on behalf of the prior owner, while Gilday paid the remaining liability for 2017.

To resolve Gilday's claim for a tax refund, the Court must first determine whether Gilday qualifies as a taxpayer with the necessary standing to seek refunds under the administrative tax appeals process for taxes it paid directly and those paid by Green

5

Tree on behalf of Batties.[3] An affirmative resolution of Gilday's standing as a taxpayer is required before the Court can consider the retroactive reinstatement of homestead deductions.[4] To proceed, it is necessary to define "taxpayer" as it applies in the context of administrative tax appeals.

## The Definition of a Taxpayer

Gilday initiated administrative tax appeals under Indiana Code Sections 6-1.1-15-1.1 and 6-1.1-15-3, establishing the process for contesting certain assessment errors. *See* IND. CODE § 6-1.1-15-1.1(a) (2018) (amended 2019); IND. CODE § 6-1.1-15-3(a) (2019) (amended 2020). In November 2018, Gilday appealed to the PTABOA pursuant to Indiana Code Section 6-1.1-15-1.1, and in January 2019, it transitioned the appeal to the Indiana Board under Indiana Code Section 6-1.1-15-3 for further review.[5] Significantly, while these statutes describe the procedural steps for administrative tax appeals, they do not provide a clear definition of "taxpayer," which is integral to this case.

In 2021, the Court resolved existing ambiguities by defining "taxpayer"

---

[3] Gilday repeatedly asserts that this Court has "confirmed" its right to pursue a refund claim for overpaid taxes as either a successor owner or taxpayer. (*See, e.g.*, Pet'r Br. Supp. Mot. Summ. J. ("Pet'r Br.") at 26-38.) This claim, however, is incorrect. In resolving the Indiana Board's dismissal of Gilday's appeals due to lack of standing, the Court simply accepted all of Gilday's factual allegations as required by the standard for a motion to dismiss. *See Gilday & Assocs., P.C. v. Marion Cnty. Assessor* (*Gilday I*), 176 N.E.3d 1000, 1004-06 (Ind. Tax Ct. 2021). Consequently, this acceptance did not constitute an endorsement or a legal validation of their correctness.

[4] This opinion does not address the issue of whether Gilday's appeals were timely filed, as the Assessor has conceded this point. (*Compare* Resp't Br. Opp'n Pet'r Mot. Summ. J. at 11-13 *with* Hr'g Tr. at 55-58.)

[5] Gilday claims its appeals were initiated under Indiana Code Section 6-1.1-15-12.1; yet, the Forms 130 clearly indicate that all four appeals were actually filed under Indiana Code Section 6-1.1-15-1.1. (*See* Pet'r Des'g Evid. Ex. A.) This discrepancy does not, however, affect the outcome of this matter.

6

specifically for administrative tax appeals under Indiana Code Sections 6-1.1-15-1 and 6-1.1-15-3 as "a person who is subject to, or liable to pay, real property tax, under Indiana Code Section 6-1.1-2-4." *See Marion Cnty. Assessor v. Kohl's Indiana, L.P.*, 179 N.E.3d 1, 6-9 (Ind. Tax Ct. 2021), *review denied.* This foundational definition of "taxpayer" underpins the entire legal argument presented, as it bases tax liability on property ownership or contractual obligations to pay taxes – factors directly impacting Gilday's standing in this case. Despite various legislative changes, including the replacement of Indiana Code Section 6-1.1-15-1 with Section 6-1.1-15-1.1 in 2017 and amendments to Indiana Code Section 6-1.1-2-4 in 2018, the core definition of "taxpayer" and the criteria for determining tax liability have not materially changed.[6] *Compare* IND. CODE § 6-1.1-15-1(a) (2012) (amended 2015; repealed 2017) *with* IND. CODE § 6-1.1-15-1.1(a) (2019) (2023); *see also* IND. CODE § 6-1.1-2-4(a) (2014) (amended 2018). Thus, this definition of "taxpayer" endures and is applicable to this case, allowing the Court to proceed to the specific legal questions concerning Gilday's status as a taxpayer.

**Whether Gilday is a Taxpayer**

From 2014 to 2017, under Indiana Code Section 6-1.1-2-4, an entity's tax liability for real property taxes – and consequently its status as a taxpayer – depended on either

---

[6] While the Legislature enacted a statute that defined the word "taxpayer" in 2022, it did not specify that this definition should apply retroactively. *See* Pub. L. No. 174-2022, § 30 (eff. July 1, 2022); *see also Izaak Walton League of Am. v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals*, 881 N.E.2d 737, 741 (Ind. Tax Ct. 2008) (indicating that statutes typically are given prospective effect only, unless there is an unambiguous and unequivocal legislative intent for retroactive application).

7

property ownership or a contractual obligation to pay those taxes.[7] For Gilday, the

central issue is whether the circumstances surrounding its acquisition of the subject

property meet these criteria. With "taxpayer" now explicitly defined for the administrative

tax appeals in this case, the Court must determine whether these conditions confer on

Gilday the standing to claim tax refunds for the taxes it paid directly and for those paid

by Green Tree on Batties' behalf.

**Taxes Paid by Gilday**

During the years at issue, the statutorily prescribed date to assess real property

for the annual collection of *ad valorem* property taxes shifted from March 1 for 2014 and

2015 to January 1 for 2016 and 2017. *See* IND. CODE § 6-1.1-1-2 (2014) (amended

2014); IND. CODE § 6-1.1-2-1.5(a) (2014). Importantly, the deadlines for tax payments

remained the same, with taxes being payable in arrears – "due in two (2) equal

installments on May 10 and November 10 of the following year." IND. CODE § 6-1.1-22-

9(a) (2014). This continuity in the payment deadlines, especially the practice of paying

in arrears, sets the backdrop for evaluating the tax obligations that Gilday would later

assume as a new property owner.

When Gilday acquired the subject property in July of 2018, it also assumed

responsibility for previously assessed, yet *unpaid*, taxes from earlier periods. *See* I.C. §

6-1.1-2-4(a); *see also, e.g., Beckstrom v. Cnty. of Becker*, 1983 WL 1095, at *4 (Minn.

---

[7] Gilday has cited *U.S. v. Williams*, 514 U.S. 527 (1995), to support the proposition that a "taxpayer" eligible to seek a refund includes "a party paying taxes for which it was not assessed[.]" (*See* Pet'r Br. at 40-41.) Nevertheless, this case does not apply here as it pertains to the statutory administrative tax appeals process at the federal level, not Indiana. *See U.S. v. Williams*, 514 U.S. 527, 529 (1995) (holding that a property owner, "who paid a tax under protest to remove a lien on her property, has standing to bring a refund action under 28 U.S. C. § 1346(a)(1), even though the tax she paid was assessed against a third party").

8

Tax Ct. Oct. 19, 1983) (explaining that "real estate taxes [typically] are assessed against all the interests in real property (i.e. the entire bundle of rights) and anyone claiming any of those rights is required to pay those taxes as against the state"). By acquiring the subject property and its fiscal responsibilities, Gilday cemented its status as a taxpayer, consistent with the applicable definition. Specifically, Gilday settled the unpaid November 2017 tax installment, thus fulfilling its obligations under Indiana Code Section 6-1.1-2-4. Accordingly, the undisputed material facts conclusively establish that Gilday was a taxpayer with standing to claim refunds for the 2017 tax liabilities it directly paid.

**Taxes Paid by Green Tree**

By July 2018, Green Tree had already paid the property taxes for 2014 to mid-2017 on behalf of Batties, fulfilling its contractual obligations and establishing itself as the taxpayer for that period. Nonetheless, having purchased the property by that date, Gilday contends that it also acquired "taxpayer" status for the same period through "rights" transferred either by the Agreed Foreclosure Judgment or under Indiana Code Section 32-29-7-10(a). However, as will be shown, neither the plain terms of the Agreed Foreclosure Judgment nor the issuance of the Sheriff's Deed under Indiana Code Section 32-29-7-10(a) delineates such a transfer of rights.

*Analysis of the Agreed Foreclosure Judgment*

As part of the foreclosure proceedings, Gilday and Green Tree executed the Agreed Foreclosure Judgment, creating a contractual agreement between them. Gilday asserts that the Agreed Foreclosure Judgment implicitly transferred all ownership rights because it required Gilday to settle Green Tree's judgment before making a credit bid at

9

the sheriff's sale.[8] The resolution of this claim hinges on principles of contract interpretation.

Under standard contract law principles, the Agreed Foreclosure Judgment should be interpreted "'to give effect to the intent of the parties expressed within the four corners of the document.'" *See Kohl's Indiana*, 179 N.E.3d at 9 (citation omitted). It contains two clauses regarding credit bids: the first grants Gilday the "full right to bid its judgment amount at the prospective Sheriff's Sale[,]" and the second limits credit bids to Gilday and Green Tree, "empower[ing them] to bid upon [the subject property] using the indebtedness due to each respectively." (*See* Pet'r Des'g Evid., Ex. O at 4-5.)

Neither clause in the Agreed Foreclosure Judgment conditions Gilday's bidding rights at the sheriff's sale on the settlement of Green Tree's judgment, nor do they transfer rights to claim tax refunds. Moreover, no other part of the Agreed Foreclosure Judgment or Green Tree's separate foreclosure decree discusses the transfer or assignment of the right to tax refunds. (*See* Pet'r Des'g Evid. Exs. O-P.) The lack of explicit language concerning the transfer or assignment of tax refund rights undermines Gilday's claim of "taxpayer" status and its eligibility to pursue refunds for taxes previously paid by Green Tree on behalf of Batties. Accordingly, the Court finds that Gilday has not met its initial burden to show it was entitled to judgment as a matter of law because the Agreed Foreclosure Judgment required it to pay Green Tree's judgment – and thus indirectly assume the tax obligations – before making a credit bid at the sheriff's sale.

---

[8] "A 'credit bid' is a bid made by the judgment creditor in which no money is exchanged. A 'full credit bid' is a sheriff's sale bid for the full amount of the judgment, including costs." *Stoffel v. JPMorgan Chase Bank, N.A.*, 3 N.E.3d 548, 551 n.2 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

*Rights Transferred Under Indiana Code Section 32-29-7-10*

Gilday alternatively claims that acquiring the Sheriff's Deed under Indiana Code Section 32-29-7-10(a) conferred taxpayer status by transferring all rights and interests previously held by Green Tree in the property, including those related to past tax payments. However, this claim is not supported by the deed or the statutory law. Although the phrase "all rights, title, and interests" in the Sheriff's Deed appears comprehensive, it does not include every conceivable right or interest formerly held by Green Tree and Batties, as indicated by the statutory framework governing mortgage foreclosures.

When a property owner defaults on a mortgage, the lender may initiate foreclosure proceedings in the "county where the real estate is located to foreclose the equity of redemption contained in the mortgage." *See* IND. CODE § 32-30-10-3(a) (2024). Indiana law requires adherence to specific statutory procedures during foreclosures, including the handling of surpluses from sheriff's sales. *See Edler v. Regions Bank*, 60 N.E.3d 288, 291 (Ind. Ct. App. 2016). Specifically, proceeds from a sheriff's sale must be distributed in a statutorily prescribed order, with any remaining surplus transferred to the mortgage debtor, his heirs, or assigns. *See* IND. CODE §§ 32-29-7-9(b), -30-10-14 (2018). Indeed, foreclosure proceedings do not automatically grant the mortgagee bank rights to possess the property, nor are they entitled to retain any surplus as a windfall. *See E. Point Bus. Park, LLC v. Priv. Real Est. Holdings, LLC*, 49 N.E.3d 589, 606 (Ind. Ct. App. 2015).

In this case, the Agreed Foreclosure Judgment and Green Tree's separate foreclosure decree directed that the proceeds from the sheriff's sale be distributed

according to Indiana Code Section 32-30-10-14. (*See* Pet'r Des'g Evid. Ex. O at 5-6, Ex. P at 5.) With Green Tree's and Gilday's judgments fully satisfied, any overpayment of property taxes from 2014 to mid-2017 would be considered surplus. Thus, under the controlling statutory provisions, the right to recover any excess funds belongs to Batties or his assigns, not Gilday or Green Tree. At best, Gilday is a successor in interest to Batties, however, the statute specifically requires that Gilday be the mortgage debtor, or one of his heirs or assigns. Gilday has provided no evidence to establish such a status. Consequently, Gilday has not met its initial burden of proving entitlement to judgment as a matter of law, as it failed to demonstrate that acquiring the Sheriff's Deed conferred the comprehensive rights it claimed.

Given these findings, Gilday is not recognized as a "taxpayer" entitled to seek refunds for taxes paid by Green Tree, due to the absence of a clear transfer of such rights. However, Gilday is a "taxpayer" eligible to claim refunds for taxes it directly paid after acquiring the subject property. Accordingly, the Court will now address the final sub-issue concerning the potential retroactive reinstatement of homestead deductions.

**Whether Homestead Deductions Can Be Retroactively Reinstated**

*The Homestead Deductions*

During the 2010 tax year, on the statutorily prescribed assessment date, a person's "homestead"[9] was eligible for a standard deduction that reduced its assessed value up to $45,000. *See* IND. CODE § 6-1.1-2-1 (2010); IND. CODE § 6-1.1-12-37(b)-(c) (2010) (amended 2011). This eligibility also extended to a supplemental homestead

---

[9] The word "homestead" was statutorily defined as an individual's principal place of residence in Indiana, "consist[ing] of a dwelling and the real estate, not exceeding one (1) acre, that immediately surround[ed] that dwelling." IND. CODE § 6-1.1-12-37(a)(2) (2010) (amended 2011).

deduction and a legislatively implemented 1% "tax cap."[10] *See* IND. CODE § 6-1.1-12-37.5 (2010) (amended 2023); IND. CODE § 6-1.1-20.6-2(a) (2010) (amended 2013); IND. CODE § 6-1.1-20.6-7.5(a) (2010).

To obtain the homestead deduction, a person needed to file a certified statement with the county auditor, who would apply the deductions annually. *See* I.C. § 6-1.1-12-37(b), (e). The county auditor was authorized to terminate the deduction if the auditor determined an otherwise eligible person failed to comply with the homestead verification process before January 1, 2013.[11] *See* IND. CODE § 6-1.1-12-17.8(a), (c) (2010) (amended 2015). However, under the Reinstatement Rule in Indiana Code Section 6-1.1-12-17.8(h), the homestead deduction will be reinstated if "the taxpayer provides proof that the taxpayer is eligible for the deduction and is not claiming the deduction for another property." I.C. § 6-1.1-12-17.8(h).

The subject property received homestead deductions until 2013, when they were revoked by the Marion County Auditor (the "Auditor"). While the parties have contested the appropriateness of this revocation, the Reinstatement Rule's plain language overrides these concerns by allowing deductions to be reinstated upon subsequent compliance:

---

[10] The evidence does not reveal when Batties originally qualified for a homestead deduction. Consequently, the Court will reference the requirements and process for obtaining and revoking the homestead deduction as they were established in 2010.

[11] Initiated in 2010, the homestead verification process was designed to collect certain data from individuals or married couples claiming the homestead deduction for use in the prevention of homestead fraud. (*See* Resp't Des'g Evid., Aff. of Drew Carlson ("Carlson Aff.") ¶ 5, Ex. A.) *See also* I.C. § 6-1.1-12-37(i). In Marion County, this process involved multiple steps including issuing, returning, and processing a pink verification form, and inputting data into a secure database that allowed "county auditors to track homesteads statewide and prevent fraud." (*See* Resp't Des'g Evid., Carlson Aff. ¶¶ 5-13, Exs. A-D).) *See also* IND. CODE § 6-1.1-22-8.1(b)(9) (2010) (amended 2015).

13

> If a county auditor terminates a [homestead] deduction because the taxpayer claiming the deduction did not comply with the requirement in IC 6-1.1-22-8.1(b)(9) before January 1, 2013, the county auditor *shall* reinstate the deduction if the taxpayer provides proof that the taxpayer is eligible for the deduction and is not claiming the deduction for any other property.

I.C. § 6-1.1-12-17.8(h) (emphasis added). *See also Miller Pipeline Corp. v. Indiana Dep't of State Revenue*, 995 N.E.2d 733, 734 n.1 (Ind. Tax Ct. 2013) (indicating that the resolution of a summary judgment motion depends on whether there are any material facts in dispute that are essential to deciding the case as a matter of law). This, however, does not end the discussion because there remains a dispute as to whether these deductions and related benefits can be retroactively reinstated through the correction of error appeals process. Gilday argues for this possibility, while the Assessor, focusing on the tense used in the statute, insists deductions should only be restored prospectively. The Court finds the Assessor's interpretation overly restrictive.

The Assessor's argument selectively applies the principle that statutes generally have prospective effect unless explicitly stated otherwise. *See, e.g.*, *Elkhart Cnty. Assessor v. Lexington Square, LLC*, 219 N.E.3d 236, 244-45 (Ind. Tax Ct. 2023) (discussing this rule of statutory interpretation and an exception to the rule). But, rules of statutory construction caution against expanding or contracting statutory language beyond its plain meaning. Specifically, these rules prohibit a court from expanding or contracting the meaning of a statute by either reading into it language to correct supposed omissions or defects *or* substituting language that it feels the Legislature may have intended. *See, e.g.*, *Hutcherson v. Ward*, 2 N.E.3d 138, 142 (Ind. Tax Ct. 2013); *Rogers v. Calumet Nat'l Bank of Hammond*, 12 N.E.2d 261, 264-65 (Ind. 1938); *Brighton v. Schoffstall*, 401 N.E.2d 84, 86 (Ind. Ct. App. 1980). These rules ensure that

14

the statutory language, as it is written, is the primary guide for its application.

The Reinstatement Rule does not specify a time limit or method for proving eligibility, undermining the Assessor's argument for strictly prospective application. *See* I.C. § 6-1.1-12-17.8(h). The Court therefore declines to read these restrictions into the Reinstatement Rule, as the Assessor's argument urges. The correction of error appeals process allows for retroactive application up to "three (3) years after the taxes were first due[,]" providing a viable mechanism for reinstating denied or omitted deductions and tax caps. *See* I.C. § 6-1.1-15-1.1(a)-(b)*; see also, e.g.*, *Town of St. John v. State Bd. of Tax Comm'rs*, 698 N.E.2d 399, 400 (Ind. Tax Ct. 1998) (regarding the retroactive aspect of the correction of error tax appeal process). Nothing within the plain language of either Indiana Code Sections 6-1.1-12-17.8 or 6-1.1-15-1.1 precludes using this appeals process to retroactively reinstate the homestead deduction and the related benefits.[12] The Court now turns to the undisputed facts.

Batties lost the homestead deduction and related tax benefits in 2013 due to the Auditor's determination that he failed to comply with the verification deadlines. (*See* Resp't Des'g Evid., Aff. of Drew Carlson ("Carlson Aff.") ¶¶ 5-16.) As a result, the subject property's 2017 tax liability did not reflect the homestead deduction or related benefits, despite Batties' exclusive use of the property as his principal place of residence. If not for this determination, the homestead deduction, the supplemental

---

[12] The parties have not contested whether the phrase "denial or omission of a deduction" under Indiana Code Section 6-1.1-15-1.1 includes the removal of a homestead deduction under Indiana Code Section 6-1.1-12-17.8. Consequently, for purposes of this case, the Court assumes without deciding that removal is encompassed within this phrase. *See Ciceu v. Knox Cnty. Assessor*, Case No. 23T-TA-00023, 2024 WL 1597532, *2-3 (Ind. Tax Ct. Apr. 12, 2024) (providing that the Court will not abandon its role as an impartial arbiter and make up arguments for the parties).

homestead deduction, and the 1% tax cap would have reduced the 2017 tax liability. When Gilday paid these liabilities in 2018 post-acquisition, it positioned itself to benefit from any adjustments due to reinstated deductions and related benefits. Under the Reinstatement Rule and the correction of error appeals process, the Auditor must now reinstate these benefits for 2017, entitling Gilday to a refund of the overpaid taxes.

The Assessor has not provided any legal basis to deny the refund to Gilday, who paid the taxes. Consequently, as a matter of law, Gilday is entitled to a refund for all overpaid taxes resulting from the previously denied or omitted deductions and tax cap for the latter half of 2017.

## CONCLUSION

Gilday contends that there is no genuine issue of material fact concerning its entitlement, as the highest bidder at the foreclosure sale, to refunds of taxes paid by a lender on behalf of the former owner from 2014 to part of 2017, and to those taxes it directly paid after acquiring the property for the remainder of 2017. Despite these assertions, the Court finds that Gilday has not demonstrated, as matter of law, its qualification as a taxpayer eligible to pursue refunds for taxes paid by the lender from 2014 through 2016. Nonetheless, Gilday has established its qualification as a taxpayer and its entitlement to a refund for taxes it overpaid in the 2017 tax year. Consequently, the Court GRANTS Gilday's motion for summary judgment solely with respect to the

16

refund for overpaid taxes arising from its direct tax payments in 2017. Accordingly, this matter is remanded to the Indiana Board for action consistent with this opinion.

SO ORDERED this 20th day of May 2024.

_____
Margret Robb
Senior Judge, Indiana Tax Court


Distribution:
James K. Gilday, John P. Lowrey, Indiana Board of Tax Review